1  James A. Murphy - 062223
   JMurphy@mpbf.com
2  Harlan B. Watkins – 176458
   hwatkins@mpbf.com
3  John P. Girarde – 191518
   jgirarde@mpbf.com
4  MURPHY, PEARSON, BRADLEY & FEENEY
   88 Kearny Street, 10th Floor
5  San Francisco, CA  94108-5530
   Tel:    (415) 788-1900
6  Fax:   (415) 393-8087

7  Attorneys for Defendants
   **BAKER & HOSTETLER LLP, and**
8  **BRUCE GREENE, ESQ.**

9

10              **UNITED STATES BANKRUPTCY COURT**

11              **EASTERN DISTRICT OF CALIFORNIA**

12                     **FRESNO DIVISION**

13  In re                                    CASE NO. 17-13797

14  TULARE LOCAL HEALTHCARE DISTRICT,        CHAPTER 9
    dba TULARE REGIONAL MEDICAL
15  CENTER,

16  Debtor.

17  Tax ID #:   94-6002897

18  Address:   869 N. Cherry Street
               Tulare, CA 93274
19  _____

20  TULARE LOCAL HEALTHCARE DISTRICT,        ADV. PROC.
    dba TULARE REGIONAL MEDICAL
21  CENTER,

22              Plaintiff,                   **NOTICE OF REMOVAL OF ACTION**

23       v.                                  [28 U.S.C. § 1452; Fed. R. Bankr. P. 9027]

24  BRUCE R. GREENE; BAKER &                 [No Hearing Required]
    HOSTETLER, LLP, a limited liability
25  partnership; PARMOND KUMAR, M.D.;
    LINDA WILBOURN; RICARD TORREZ; and
26  Does 1 through 50, inclusive,

27              Defendants.

28

                                  - 1 -
    NOTICE OF REMOVAL OF ACTION                          CASE NO. 17-13797

1 **TO THE HONORABLE RENE LASTRETO II, UNITED STATES BANKRUPTCY JUDGE,**

2 **THE OFFICE OF THE UNITED STATE TRUSTEE, ALL INTERESTED PARTIES AND**

3 **THEIR COUNSEL OF RECORD:**

4       **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 157, 1334, and 1452, and Rule 9027

5 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), Defendants, Baker &

6 Hostetler LLP ("B&H") and Bruce Greene, Esq. ("Greene") (collectively, the "Defendants"), hereby

7 remove to the above-captioned bankruptcy court (the "Court") the action pending in the Superior Court

8 of the State of California in and for the County of Tulare (the "State Court") entitled *Tulare Local*

9 *Health Care District v. Bruce R. Greene; Baker & Hostetler LLP; Parmod Kumar, M.D.; Lina*

10 *Wilbourn; Richard Torrez; and Does 1 through 50, inclusive,* Case No. 278333 (the "State Court

11 Action"), including all counts and claims alleged the complaint, all actions subsumed or combined

12 with the State Court Action, and any and all matters pending in the State Court Action.

13       In support of removal of the State Court Action, the Defendants respectfully submit as follows:

14       1.    On September 30, 2017, the Tulare Local Healthcare District (the "Debtor") filed a

15 voluntary petition for relief under Chapter 9 of the Bankruptcy Code.[1]

16       2.    On October 27, 2017, the Debtor filed a List of Creditors and Claims Pursuant to 11

17 U.S.C. §§ 924 and 925 [ECF No. 154] identifying B&H as a creditor of the Debtor.  Thereafter, on

18 April 10, 2018, B&H filed an unsecured proof of claim against the Debtor ("Proof of Claim") in the

19 amount of $498,825.40 based on legal services performed for the Debtor through September 30, 2017.

20       3.    On February 2, 2018, the Debtor filed an adversary proceeding against Celtic Leasing

21 Corp., MB Financial Bank, N.A., and MB Equipment Finance, LLC (the "Adversary Proceeding" and

22 the "Celtic Parties," respectively) alleging that the Debtor was entitled to damages related to a pre-

23 petition transaction between the Debtor and one or more of the Celtic Parties (the "Celtic

24 Transaction").  In the Adversary Proceeding, the Debtor alleged that B&H provided one or more of the

25 Celtic Parties with an opinion letter on which they relied in order to proceed with the Celtic

26 Transaction (the "Opinion Letter"), and that the Celtic Transaction was an unauthorized transaction

27 with the Debtor.

28 [1] All references herein to the "Bankruptcy Code" refer to 11 U.S.C. 101 *et seq.*

NOTICE OF REMOVAL OF ACTION CHAPTER 9    CASE NO. 17-13797

4.      On January 9, 2019, the Debtor filed a Motion for Approval of Compromise of Controversies [ECF No. 981] (the "Settlement Motion"), which sought Court approval of a global settlement between the Debtor and the Celtic Parties of the Adversary Proceeding and all matters related to the Celtic Transaction.   This Court entered an Order Approving Compromise of Controversies [ECF No. 1025] (the "Settlement Order") on January 22, 2019.

5.      Shortly thereafter, on April 24, 2019, the Debtor commenced the State Court Action by filing a Complaint against the Defendants and three other individuals, alleging claims for breach of fiduciary duty, fraud, professional negligence, and breach of contract for legal services (the "Complaint," a true and correct copy of which is attached hereto as Exhibit A).   Among other things, the Complaint alleges that the Defendants issued an inaccurate Opinion Letter to one or more of the Celtic Parties which induced them to enter into the Celtic Transaction, that the Defendants took various inappropriate actions with respect to the Celtic Transaction, and that Defendants improperly received approximately $500,000 from the proceeds of the Celtic Transaction, which transaction was the subject of the earlier Adversary Proceeding, Settlement Motion, and Settlement Order of this Court.

6.      As to the Defendants, the Debtor seeks damages and to recover the attorney's fees paid to the Defendants for legal services rendered to the Debtor from and after May 6, 2015.

7.      All of the legal services that form the basis for B&H's Proof of Claim against the Debtor relate to legal services rendered to the Debtor from and after May 6, 2015.

8.      The claims being pursued by the Debtor in the State Court Action are property of the Debtor, and any proceeds recovered would similarly be property of the Debtor.

9.      All pleadings, process, orders, and other filings in the State Court Action are being filed herewith in accordance with Bankruptcy Rule 9027(a).

### Timeliness of Removal

10.      This Notice of Removal is timely filed under Bankruptcy Rule 9027(a)(3)(A) because it has been filed within 30 days after receipt of a copy of the initial pleading setting forth the claim or cause of action sought to be removed.

11.      No previous removal of the State Court Case has been attempted or effected.

NOTICE OF REMOVAL OF ACTION CHAPTER 9                              CASE NO. 17-13797

**Jurisdiction and Venue**

12.     Venue of this removal is proper under 28 U.S.C. § 1452(a) because this Court is the Bankruptcy Court of the United States District Court for the district and division encompassing the State Court where the State Court Action is pending.

13.     The Court has jurisdiction to consider the State Court Action under 28 U.S.C. § 1334 as a civil proceeding related to the Debtor's Chapter 9 bankruptcy case because the outcome of the proceeding could conceivably have an effect on the Debtor's bankruptcy case.  Removal of the State Court Action is thus appropriate under 28 U.S.C. § 1452(a), which provides that "a party may remove any claim or cause of action in a civil action…to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title."  The Court also has ancillary jurisdiction over the State Court Action to the extent resolving the State Court Action requires that the Court dispose of factually interdependent claims or to effectuate or vindicate its authority to enter its Settlement Order.

14.     The State Court Action is a non-core proceeding. The Defendants consent to the entry of final orders or judgment by the Court, regardless of whether it is determined that the Court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

**Notice**

15.     In accordance with Bankruptcy Rule 9027(b), the Defendants are promptly serving all parties to the State Court Case with this Notice of Removal, and filing this Notice of Removal in the State Court Case.

The undersigned counsel for Defendants has read the foregoing and signs the Notice of Removal pursuant to Bankruptcy Rule 9011.

Dated: May 28, 2019                    MURPHY, PEARSON, BRADLEY & FEENEY

                                       By     _/s/ Harlan B. Watkins_
                                              Harlan B. Watkins
                                              Attorneys for Defendants
                                              BAKER & HOSTETLER LLP, and BRUCE
                                              GREENE, ESQ.

JPG.3441740.docx

- 4 -

NOTICE OF REMOVAL OF ACTION CHAPTER 9                              CASE NO. 17-13797

1

**CERTIFICATE OF SERVICE**

2    I, Alice Kay, declare:

3    I am a citizen of the United States, am over the age of eighteen years, and am not a party to or

4 interested in the within entitled cause.  My business address is Murphy, Pearson, Bradley & Feeney, 88

5 Kearny Street, 10th Floor, San Francisco, CA  94108-5530.

6    On May 28, 2019, I served the following document on the parties in the within action:

7    **NOTICE OF REMOVAL**

8

| X | **VIA MAIL:** I am familiar with the business practice for collection and processing of mail. The above-described document will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service on this date, addressed as listed below. |
|---|---|

9

10

11   Michael Lampe                                   Attorney For Plaintiff
     LAW OFFICES OF MICHAEL J. LAMPE        TULARE LOCAL HEALTHCARE
12   108 West Center Avenue                          DISTRICT, dba TULARE REGIONAL
     Visalia, CA 93291                               MEDICAL CENTER
13
     Email: mjl@lampe-law.com
14
     Clerk of Court
15   Superior Court of California
     County of Tulare
16   221 South Mooney Boulevard
     Visalia, CA 93291
17

18    I declare under penalty of perjury under the laws of the State of California that the foregoing is

19 a true and correct statement and that this Certificate was executed on May 28, 2019.

20

21    By _____
         Alice Kay
22

23

24

25

26

27

28

- 5 -

NOTICE OF REMOVAL OF ACTION CHAPTER 9                              CASE NO. 17-13797

# EXHIBIT A

Assigned to ~~Judge~~ MELINDA M. REED
For All Purposes TULARE COUNTY SUPERIOR COURT
VISALIA DIVISION

APR 24 2019

STEPHANIE CAMERON, CLERK
BY: Nicole Renteria

1 │ Michael J. Lampe #82199
2 │ Michael P. Smith #206927
  │ LAW OFFICES OF MICHAEL J. LAMPE
3 │ 108 West Center Avenue
  │ Visalia, California 93291
4 │ Telephone (559) 738-5975
  │ Facsimile (559) 738-5644
5 │ mjl@lampe-law.com

6 │ Attorneys for Plaintiff

Exempt from filing fees
Government Code §6103

8 │ SUPERIOR COURT OF THE STATE OF CALIFORNIA

9 │ IN AND FOR THE COUNTY OF TULARE

11 │ TULARE LOCAL HEALTH CARE DISTRICT
12 │ *dba* Tulare Regional Medical Center, a Public
   │ Agency

Case No.   278333-

COMPLAINT FOR DAMAGES FOR:

13 │        Plaintiff,

1. Breach of Fiduciary Duty;

14 │ vs.

2. Fraud;

15 │ BRUCE R. GREENE; BAKER & HOSTETLER
16 │ LLP, a limited liability partnership; PARMOD
   │ KUMAR, M.D., LINDA WILBOURN, RICHARD
17 │ TORREZ; and Does 1 through 50, Inclusive,

3. Professional Negligence; and

4. Breach of Contract for Legal Services.

18 │        Defendants.

19 │ Plaintiff Tulare Local Health Care District *dba* Tulare Regional Medical Center alleges:

20 │                          **GENERAL ALLEGATIONS**

21 │        1.    At all times mentioned in this complaint, Tulare Local Health Care District *dba* Tulare

22 │ Regional Medical Center (*the District*) was a Health Care District operating under the laws of the

23 │ State of California.

24 │        2.    At all times mentioned in this complaint, Defendant Bruce R. Greene was an

25 │ attorney at law licensed to practice in the State of California.

CASE MANAGEMENT CONFERENCE
Hearing Date: 8-29-19
Time: 8:30
Department: 1

28 │ COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
   │ FRAUD; PROFESSIONAL NEGLIGENCE; AND
   │ BREACH OF CONTRACT FOR LEGAL SERVICES

3.     At all times mentioned in this complaint, Defendant Bruce R. Greene was a partner in the law firm of Defendant Baker & Hostetler LLP (*Baker Hostetler*).

4.     The District, Greene, and Baker Hostetler have entered into a written tolling agreement, tolling the statutes of limitation regarding the rights, claims, counterclaims, and other defenses to causes of action and claims which may be asserted by or between the parties to April 30, 2019.

5.     At all times mentioned in this complaint, the District was governed by a five person Board of Directors.

6.     At all times mentioned in this complaint through July 20, 2017, Defendant Parmod Kumar (*Kumar*) served on the Board of Directors of the District.

7.     At all times mentioned in this complaint through August 23, 2017, Defendant Linda Wilbourn (*Wilbourn*) served on the Board of Directors of the District.

8.     At all times mentioned in this complaint through September 28, 2017, Defendant Richard Torrez (*Torrez*) served on the Board of Directors of the District.

9.     Defendants Kumar, Wilbourn and Torrez are residents of Tulare County.

10.    The District does not know the true names and capacities of the defendants named herein as Does 1 through 50, and therefore sues these defendants by such fictitious names. The District will amend this complaint to allege their true names and capacities when ascertained. The District alleges on information and belief that each of the fictitiously named defendants are legally responsible in some manner for the occurrences herein alleged, and that the violations alleged herein were proximately caused by such wrongful acts. At all times herein mentioned, each of the defendants was the agent of the remaining defendants, acting in concert with the remaining defendants, and in doing the things alleged herein, was acting within the purpose, scope and course of such relationship.

## FIRST CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against Defendants Greene, Baker Hostetler, and Does 1-50)

11.    The District realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 10 of this complaint.

12.    In May of 2014, Bruce R. Greene and Baker Hostetler served as general counsel to Healthcare Conglomerate Associates, LLC (*HCCA*). (Defendants Bruce R. Greene and Baker & Hostetler LLP will hereafter collectively be referred to as *Greene*).

13.    In May of 2014, Greene also acted as personal counsel to Dr. Benny Benzeevi (*Benzeevi*), who was the sole member of HCCA.

14.    On May 29, 2014, the District entered into an Interim Joint Operating Agreement and Management Services Agreement with HCCA (collectively *the MSA*), wherein HCCA was appointed to exclusively provide day-to-day management services to and for the District with respect to the hospital, clinics, and other facilities owned by the District.

15.    The MSA was drafted and negotiated by Greene on behalf of HCCA.

16.    Approximately one year later, on May 6, 2015, the District Directors unanimously adopted Resolution 844, terminating the services of Herr, Pedersen & Berglund, general counsel to the District, and authorizing HCCA to engage new legal counsel on behalf of the District.

17.    On or before May 6, 2015, HCCA retained Greene to act as general counsel for the District.

18.    Between May 6, 2015 and July of 2017, Greene acted as legal counsel for Benzeevi, HCCA, and the District.

19.    Between May 6, 2015 and July of 2017, the interests of the District were not always aligned with the interests of Benzeevi or HCCA.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
FRAUD; PROFESSIONAL NEGLIGENCE; AND
BREACH OF CONTRACT FOR LEGAL SERVICES          -3-

20.    Between May 6, 2015 and July of 2017, while acting as general counsel for the District, Greene had a fiduciary duty to act in the bests interests of the District and the general public.

**The Betre Lawsuit:**

21.    The District alleges on information and belief that during a closed session of the District's Board conducted on March 29, 2016, Greene advised the Board to authorize the initiation of legal action, using public funds to prosecute a lawsuit against Dr. Abraham Betre (*the Betre Lawsuit*), not for the benefit of the District, but for the benefit of his other client, Benzeevi.

22.    In advising the Board to initiate legal action on Benzeevi's behalf using public funds, Greene breached his fiduciary duty to the District by placing Benzeevi's interests above the interests of the District and the general public.

23.    The District alleges on information and belief that during the March 29, 2016 closed session, Greene further advised the Board to employ the Baker Hostetler law firm to prosecute the Betre Lawsuit.

24.    In advising the Board to employ Baker Hostetler to prosecute the Betre Lawsuit, Greene breached his fiduciary duty to the District by placing his own financial interests above the interests of the District and the general public.

25.    The Board authorized the initiation of legal action against Dr. Betre pursuant to the advice given by Greene.

26.    On May 4, 2016, Greene commenced the Betre Lawsuit on behalf of Benzeevi in the Tulare County Superior Court, case no. 265230.

27.    The Betre Lawsuit seeks to recover monetary damages and injunctive relief for the benefit of Benzeevi.

28.    The District has never been a party to the Betre Lawsuit.

29.    On or about September 26, 2016, the Hon. David Mathias granted a Special Motion to Strike the Betre Lawsuit under California's anti-SLAPP statute (CCP §425.15), and ordered that the complaint filed by Benzeevi be dismissed.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
FRAUD; PROFESSIONAL NEGLIGENCE; AND
BREACH OF CONTRACT FOR LEGAL SERVICES          -4-

30.    On or about November 23, 2016, Greene, on Benzeevi's behalf, appealed the trial court order dismissing the Betre Lawsuit.

31.    On January 12, 2017, Benzeevi posted a cash appellate bond in the Betre Lawsuit with the Tulare County Superior Court (*the Appellate Bond*) in the amount of $78,306.78.

32.    The Appellate Bond was posted using District funds.

33.    The District's Directors were never asked to approve, and in fact did not approve, the posting of the Appellate Bond.

34.    The District alleges on information and belief that in using District funds to post the Appellate Bond, Benzeevi relied upon the advice of Greene, who was legal counsel for both Benzeevi and the District at the time.

35.    In advising Benzeevi to use District funds to post the Appellate Bond, Greene breached his fiduciary duty to the District by placing both his own financial interests, and the interests of Benzeevi, above the interests of the District and the general public.

**Resolution 852:**

36.    In June of 2017, the District could not meet its financial obligations.

37.    Among the financial obligations that the District could not meet was the payment of over $500,000.00 for legal services charged by Greene to the District (*the Baker Hostetler Delinquent Legal Fees*).

38.    On June 20, 2017, Kumar, Wilbourn and Torrez, in their capacities as Directors of the District, voted to adopt District Resolution 852, a true and correct copy of which is attached hereto as Exhibit 1.

39.    Resolution 852 purports to delegate to Benzeevi, as the "Authorized Representative" of HCCA, the "absolute, full and complete power and authority" to borrow up to $22,000,000.00 in the name of the District (or execute other documents for the extension of credit to the District), upon such terms and at such interest rate as Benzeevi determined to be fair, without seeking board approval of the actual terms of the loans or extensions of credit.

1    40.    Resolution 852 further purports to delegate to Benzeevi the authority to use District
2  property, both real and personal, as security for such loans or extensions of credit, without
3  seeking further board approval.

4    41.    The District alleges on information and belief that Greene prepared Resolution 852.

5    42.    When Greene prepared Resolution 852, he knew that payment of the Baker
6  Hostetler Delinquent Legal Fees might be dependent upon the Board's adoption of the resolution,
7  and financing secured thereunder.

8    43.    In preparing Resolution 852, Greene breached his fiduciary duty to the District by
9  placing his own financial interests above the interests of the District and the general public.

10                    **The Recall Election and its Aftermath:**

11    44.    On July 11, 2017, a special recall election was held to determine if Kumar should
12  be removed as a District Director.

13    45.    On July 18, 2017, the Tulare County Registrar of Voters certified that Kumar was
14  recalled by 80.6% of registered voters who cast ballots at the special recall election.

15    46.    Also on July 18, 2017, the Tulare County Registrar of Voters certified that Senovia
16  Gutierrez (*Gutierrez*) had been elected to replace Kumar on the District Board of Directors.

17    47.    On June 25, 2017, Gutierrez was sworn into office by Tulare County Superior Court
18  Judge Walter Gorelick at a public ceremony.

19    48.    On July 26, 2017, a regular meeting of the Board was scheduled to be held.

20    49.    The agenda posted for the July 26 Board meeting contained the following entry:
21  "Chair Announcement - As a result of the recent special election on July 11, 2017, Senovia
22  Gutierrez will replace Dr. Parmod Kumar as a Board member." A true and correct copy of the July
23  26 agenda is attached hereto as Exhibit 2.

24    50.    Contrary to the Chair Announcement, Gutierrez was not seated as a Board member
25  on July 26, 2017.

26
27
28
———————————————
COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
FRAUD; PROFESSIONAL NEGLIGENCE; AND
BREACH OF CONTRACT FOR LEGAL SERVICES          -6-

51.    The District alleges on information and belief that Greene instructed Wilbourn, as Board Chair, to refuse to seat Gutierrez as a Board member on July 26, 2017.

52.    The District alleges on information and belief that on July 26, 2017, Greene knew that Benzeevi was negotiating with Celtic Leasing Corporation to secure additional District financing (*the Celtic Financing*), under the authority purportedly granted to Benzeevi under Resolution 852.

53.    The District alleges on information and belief that Greene instructed Wilbourn to refuse to seat Gutierrez as a Board member knowing that Gutierrez, when seated, would vote with two dissenting Directors to immediately rescind Resolution 852, thereby jeopardizing payment of the Baker Hostetler Delinquent Legal Fees.

54.    In instructing Wilbourn to refuse to seat Gutierrez as a Board member, Greene breached his fiduciary duty to the District by placing his own financial interests above the interests of the District and the general public.

55.    On July 27, 2017, a special meeting of the board was held by Directors Kevin Northcraft, Mike Jamaica, and Senovia Gutierrez, wherein action was taken to (1) terminate the services of Greene and the Baker Hostetler law firm, and (2) rescind Resolution 852.

56.    On multiple occasions thereafter, Greene refused to recognize the authority of Directors Northcraft, Jamaica and Gutierrez, and continued to represent to the general public that he was general counsel for the District, even though his services had been lawfully terminated.

57.    As an example, on July 28, 2017, Greene attempted to intimidate Directors Northcraft, Jamaica and Gutierrez by sending an email, a true and correct copy of which is attached hereto as Exhibit 3, reading, in part, as follows:

> "I must caution you that you, Mr. Jamaica, and Ms. Gutierrez are risking personal liability for taking these illegal actions, for which there will be no insurance coverage or indemnification rights under the District's Bylaws."

COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
FRAUD; PROFESSIONAL NEGLIGENCE; AND
BREACH OF CONTRACT FOR LEGAL SERVICES           -7-

58.     The District alleges on information and belief that Greene refused to recognize the authority of Directors Northcraft, Jamaica and Gutierrez; continued to represent to the general public that he was general counsel for the District after his services had been lawfully terminated; and on multiple occasions attempted to intimidate Directors Northcraft, Jamaica and Gutierrez, knowing that they would ratify the Board's prior rescission of Resolution 852, thereby jeopardizing payment of the Baker Hostetler Delinquent Legal Fees.

59.     In taking the actions alleged above, Greene breached his fiduciary duty to the District by placing his own financial interests above the interests of the District and the general public.

60.     On August 23, 2017, a regular meeting of the Board was scheduled to be held, commencing at 4:00 p.m.

61.     On August 23 at 3:07 p.m. – a mere 53 minutes prior to the commencement of the August Board meeting – Greene notified Board members by email that Chair Linda Wilbourn had resigned effective noon that day. A true and correct copy of Greene's email with Wilbourn's resignation is attached hereto as Exhibit 4.

62.     Based upon "word" received from fellow Board member Torrez that he would not be attending the August 23 Board meeting, Greene wrongly concluded that, "there can be no quorum of the Board at the scheduled meeting, and the meeting will be cancelled." (Exhibit 4.)

63.     Greene 's theory that Gutierrez had not been properly seated appears to account for Greene's erroneous conclusion regarding a quorum. If Gutierrez was not a Board member, and Wilbourn resigned prior to the scheduled meeting, the Board would only have *three* members. A quorum of the Board would then be met by the appearance of *two* Directors.

64.     Both Northcraft and Jamaica were present for the Board meeting of August 23, 2017.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
FRAUD; PROFESSIONAL NEGLIGENCE; AND
BREACH OF CONTRACT FOR LEGAL SERVICES      -8-

65. After declaring that the August 23, 2017 Board meeting would be cancelled for lack of a quorum, Greene realized his error, and attempted via a second email, transmitted at 4:00 p.m., to move the effective date of the Wilbourn resignation to the following day. A true and correct copy of Greene's second email is attached hereto as Exhibit 5.

66. In his second email to Board members on August 23, Greene made the following representations:

> "I was just advised by Linda that she intended her resignation to be effective tomorrow at 8AM, not today. So as of today, she is still a Board Member. However, she is not able to attend the meeting this afternoon, and there is no quorum possible." (Exhibit 5)

67. The District alleges on information and belief that the representations made by Greene in Exhibit 5 are false.

68. The District alleges on information and belief that Greene orchestrated or participated in the attempt to deny a quorum at the August Board meeting knowing that if the meeting commenced with a quorum, the Board would ratify its prior rescission of Resolution 852, thereby jeopardizing payment of the Baker Hostetler Delinquent Legal Fees.

69. The District alleges on information and belief that Greene orchestrated or participated in the attempt to deny a quorum at the August Board meeting knowing that the Celtic Financing was only days away from funding, thereby guaranteeing payment of the Baker Hostetler Delinquent Legal Fees.

70. In taking the actions alleged above, Greene breached his fiduciary duty to the District by placing his own financial interests above the interests of the District and the general public.

**Greene's Opinion of Counsel Letter:**

71. On August 28, 2017, Greene executed an Opinion of Counsel Letter, furnished to to Celtic Leasing for the purpose of securing $3,000,000.00 in District financing. A true and correct copy of Greene's letter is attached hereto as Exhibit 6.

72.    In his August 28 Opinion of Counsel Letter, Greene affirmatively represented to Celtic Leasing that Benzeevi was authorized to execute lease documents on behalf of the District.

73.    In his August 28 Opinion of Counsel Letter, Greene attached a copy of Resolution 852, and affirmatively represented to Celtic Leasing that Resolution 852 was enforceable against the District.

74.    In his August 28 Opinion of Counsel Letter, Greene failed to disclose to Celtic Leasing that on July 27 Directors Northcraft, Jamaica and Gutierrez voted to rescind Resolution 852.

75.    The District alleges on information and belief that Celtic Leasing would not have entered into the lease transaction which generated $3,000,000.00 in new District financing without an Opinion of Counsel letter from Greene upon which it could rely.

76.    On or about August 31, 2017, the Celtic Leasing transaction closed, generating $3,000,000.00 in new District financing through the sale of medical equipment owned by the District.

77.    The $3,000,000.00 generated from the sale of District assets was deposited into an account controlled by Benzeevi.

**Greene's Receipt of $509,727.23 in Delinquent Legal Fees**

78.    On September 10, 2017, Greene was paid $499,727.93 from the proceeds of the Celtic Leasing transaction. A true and correct copy of the check reflecting this payment is attached hereto as Exhibit 7.

79.    On September 14, 2017, Greene was paid an additional $10,000.00 from the proceeds of the Celtic Leasing transaction. A true and correct copy of the check reflecting this payment is attached hereto as Exhibit 8.

80.    The District alleges on information and belief that Greene delivered his Opinion of Counsel Letter to Celtic Leasing as a means of guaranteeing payment of Delinquent Legal Fees in the total amount of $509,727.93.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
FRAUD; PROFESSIONAL NEGLIGENCE; AND
BREACH OF CONTRACT FOR LEGAL SERVICES          -10-

81.   In taking the actions alleged above, Greene breached his fiduciary duty to the District by placing his own financial interests above the interests of the District and the general public.

82.   On September 27, 2017, Benzeevi executed a Deed of Trust, purporting to encumber District real property for the purpose of securing preexisting notes payable to HCCA totaling $10,233,950.05. A true and correct copy of this Deed of Trust is attached hereto as Exhibit 9.

83.   The District alleges on information and belief that Benzeevi executed and recorded the Deed of Trust attached hereto as Exhibit 9 on the advice and counsel of Greene.

84.   On September 29, 2017, Greene terminated its attorney-client relationship with Benzeevi, HCCA, and all entities affiliated with Benzeevi and HCCA.

85.   As a result of the multiple breaches of Greene's fiduciary duty to the District and the general public described above, the District has been damaged in an amount exceeding $4,800,000.00.

86.   In committing the acts described herein, Greene and Baker Hostetler were guilty of oppression, fraud, or malice, in that they intentionally placed their own financial interests above those of their client, in violation of their duty of loyalty to the District and in violation of the California Rules of Professional Conduct. As a result, the District is entitled to an award of exemplary or punitive damages.

**SECOND CAUSE OF ACTION**

**Breach of Fiduciary Duty**

**(Against Defendants Kumar, Wilbourn and Torrez)**

87.   The District realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 86 of this complaint.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
FRAUD; PROFESSIONAL NEGLIGENCE; AND
BREACH OF CONTRACT FOR LEGAL SERVICES          -11-

88.     At all times mentioned in this complaint, Kumar, Wilbourn and Torrez (*the Former Directors*), as elected public officials, had a fiduciary duty to act in the bests interest of the District and the general public.

89.     On June 20, 2017, the Former Directors voted to adopt District Resolution 852. (Exhibit 1.)

90.     Resolution 852 purports to delegate to Benzeevi, as the "Authorized Representative" of HCCA, the "absolute, full and complete power and authority" to borrow up to $22,000,000.00 in the name of the District (or execute other documents for the extension of credit to the District), upon such terms and at such interest rate as Benzeevi determined to be fair, without seeking board approval of the actual terms of the loans or extensions of credit.

91.     Resolution 852 further purports to delegate to Benzeevi the authority to use District property, both real and personal, as security for such loans or extensions of credit, without seeking further board approval.

92.     In adopting Resolution 852, the Former Directors breached their fiduciary duty to the District and the general public by attempting to invest such authority with Benzeevi, as Board oversight of incurring up to $22,000,000.00 in public debt, and using District assets as security for that debt, constituted a "non-delegable" duty of the District's Board.

93.     In adopting Resolution 852, the Former Directors breached their fiduciary duty to the general public by engaging in an "ultra vires" act, falling outside the powers that are vested in public officials.

94.     In adopting Resolution 852, the Former Directors were not acting within the scope of their authority as public officials.

95.     In adopting Resolution 852, the Former Directors were not acting in good faith and in a manner they believed to be in the best interests of the District.

COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
FRAUD; PROFESSIONAL NEGLIGENCE; AND
BREACH OF CONTRACT FOR LEGAL SERVICES          -12-

96.     As a consequence of the Former Directors' breach of their fiduciary duties to the District and the general public, on or about August 31, 2017, District assets were sold to Celtic Leasing Corporation for $3,000,000.00 and immediately leased back by the District under a financing vehicle known as a "lease-back" arrangement.

97.     As a consequence of the Former Directors' breach of their fiduciary duties to the District and the general public, the entire $3,000,000.00 generated from the sale of District assets was placed into an account controlled by Benzeevi and HCCA.

98.     As a further consequence of the Former Directors' breach of their fiduciary duty to the District and the general public, on September 27, 2017, Benzeevi executed a Deed of Trust, purporting to encumber District real property for the purpose of securing preexisting notes payable to HCCA totaling $10,233,950.05.

99.     As a result of the Former Directors' breach of their fiduciary duty to the District and the general public, the District has been damaged in an amount to be shown according to proof exceeding the limited jurisdiction of this court.

### THIRD CAUSE OF ACTION

### Damages for Fraud

### (Against Defendant Bruce R. Greene and Does 1-50)

100.    The District realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 99 of this complaint.

101.    On August 23, 2017, Greene made the following representations to Board Members by email:

> "I was just advised by Linda that she intended her resignation to be effective tomorrow at 8AM, not today. So as of today, she is still a Board Member. However, she is not able to attend the meeting this afternoon, and there is no quorum possible." (Exhibit 5)

COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
FRAUD; PROFESSIONAL NEGLIGENCE; AND
BREACH OF CONTRACT FOR LEGAL SERVICES              -13-

102.  The District alleges on information and belief that Greene's representation that, "I was just advised by [Wilbourn] that she intended her resignation to be effective tomorrow at 8AM, not today," was false, and Greene knew the representation to be false at the time he made it.

103.  Greene's representation that, "So as of today, [Wilbourn] is still a Board Member," was false, and Greene knew the representation to be false at the time he made it.

104.  The District alleges on information and belief that Greene's representation that, "However, [Wilbourn] is not able to attend the meeting this afternoon," was false, and Greene knew the representation to be false at the time he made it.

105.  Greene's representation that, as a consequence of his previous misrepresentations, "there is no quorum possible," was false, and Greene knew the representation to be false at the time he made it.

106.  At the time Greene made the representations set forth above, Greene intended that District management, including his other clients, Benzeevi and HCCA, rely on the representations.

107.  The District and others, including Celtic Leasing, reasonably relied upon Greene's representations.

108.  As a result of the fraudulent conduct described above, the District has been damaged in an amount exceeding $4,800,000.00.

109.  In committing the acts described herein, Greene and Baker Hostetler were guilty of oppression, fraud, or malice, in that the representations were made to insure payment of Delinquent Legal Fees in the amount of $509,727.93, with complete disregard for the interests of their client, in violation of their duty of loyalty to the District and in violation of the California Rules of Professional Conduct.  As a result, the District is entitled to an award of exemplary or punitive damages.

**FOURTH CAUSE OF ACTION**

**Professional Negligence**

**(Against Defendants Greene, Baker Hostetler, and Does 1-50)**

110.   The District realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 109 of this complaint.

111.   On or before May 6, 2015, Greene was retained to act as general counsel for the District.

112.   Greene failed to use reasonable skill and care in the representation of the District in that he failed to adequately disclose conflicts of interest that existed by virtue of his simultaneous representation of the District, on the one hand, and Benzeevi, HCCA, and other entities owned or controlled by Benzeevi, on the other hand.

113.   Greene failed to use reasonable skill and care in the representation of the District in that he continuously acted in a manner that placed the interests of Greene, Baker Hostetler, Benzeevi, and HCCA above the interests of the District.

114.   Greene failed to use reasonable skill and care in the representation of the District in that he misrepresented to the Board facts which he knew were false.

115.   Greene failed to use reasonable skill and care in the representation of the District in that he took a position adverse to the District in orchestrating or participating in an effort to delay the seating of Gutierrez as a Director after she was duly elected to the Board.

116.   Greene failed to use reasonable skill and care in the representation of the District in that he executed and delivered his Opinion of Counsel letter to Celtic Leasing at a time when he knew that Resolution 852 was no longer in effect.

117.   As a direct and proximate result of the negligence and carelessness of Greene and Baker Hostetler, the District has been damaged in an amount to be shown according to proof exceeding the limited jurisdiction of this court.

1              **FIFTH CAUSE OF ACTION**

2                **Breach of Contract**

3        **(Against Defendants Greene, Baker Hostetler, and Does 1-50)**

4        118.    The District realleges and incorporates herein by reference each and every

5    allegation contained in paragraphs 1 through 117 of this complaint.

6        119.    The District alleges on information and belief that a written engagement letter exists

7    between Greene and the District.

8        120.    The District alleges on information and belief that this written engagement letter is

9    unenforceable because it violates Rule 3-310(C)(3) of the Rules of Professional Conduct, in effect

10   at the time, because Greene did not secure the informed written consent of the District to

11   represent the District while simultaneously representing Benzeevi, HCCA, and other entities

12   owned or controlled by Benzeevi, all of whom had interests adverse to the District.

13       121.    The failure of Greene to comply with Rule 3-310(C)(3) renders the engagement

14   agreement unenforceable in its entirety.

15       122.    As a result of Greene's failure to comply with the terms of Rule 3-310(C)(3), all fees

16   for legal services paid by the District to Greene or Baker Hostetler, directly or indirectly, are

17   properly disgorged by Greene and Baker Hostetler, and recovered by the District.

18       123.    The District has paid Greene and Baker Hostetler for legal services the District is

19   entitled to recover in an amount to be shown according to proof exceeding the limited jurisdiction

20   of this court.

21       WHEREFORE, plaintiff prays judgment as follows:

22       ON THE FIRST CAUSE OF ACTION:

23       1.      For general damages against Defendants Bruce R. Greene and Baker Hostetler in

24   an amount exceeding $4,800,000.00; and

25       2.      For exemplary or punitive damages against Defendant Bruce R. Greene and Baker

26   Hostetler in an amount to be shown according to proof.

27

28   COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
     FRAUD; PROFESSIONAL NEGLIGENCE; AND
     BREACH OF CONTRACT FOR LEGAL SERVICES          -16-

ON THE SECOND CAUSE OF ACTION:

3.     For general damages against Defendants Kumar, Wilbourn and Torrez in an amount to be shown according to proof.

ON THE THIRD CAUSE OF ACTION:

4.     For general damages against Defendants Bruce R. Greene and Baker Hostetler in an amount exceeding $4,800,000.00; and

5.     For exemplary or punitive damages against Defendant Bruce R. Greene and Baker Hostetler in an amount to be shown according to proof.

ON THE FOURTH CAUSE OF ACTION:

6.     For general damages against Defendants Bruce R. Greene and Baker Hostetler in an amount to be shown according to proof.

ON THE FIFTH CAUSE OF ACTION:

7.     For recovery of all fees paid by the District to Defendants Bruce R. Greene and Baker Hostetler for legal services rendered to the District from and after May 6, 2015.

ON ALL CAUSES OF ACTION:

8.     For costs of suit incurred herein; and

2.     For such other relief as the court may find necessary or appropriate.


Dated: April 24, 2019

LAW OFFICES OF MICHAEL J. LAMPE
Attorneys for Plaintiff
By: Michael J. Lampe


COMPLAINT FOR BREACH OF FIDUCIARY DUTY;
FRAUD; PROFESSIONAL NEGLIGENCE; AND
BREACH OF CONTRACT FOR LEGAL SERVICES          -17-

### RESOLUTION NO. 852 OF THE BOARD OF DIRECTORS OF
### TULARE REGIONAL MEDICAL CENTER

WHEREAS, the Board of Directors (the "Board") of Tulare Local Healthcare District dba Tulare Regional Medical Center (the "District") has determined that it is necessary and appropriate, and in the best interests of the District to borrow funds to cover operating cash flow; and

WHEREAS, the Board has determined that it is necessary and appropriate, and in the best interests of the District, to have its manager, Healthcare Conglomerate Associates, LLC ("HCCA"), acting through its Chairman, Benny Benzeevi, M.D. ("Authorized Representative") seek to obtain a loan for the purposes of payment of operating expenses of the Hospital, repayment of debt, payment of ongoing costs of construction of the Tower project, and for other Hospital purposes.

NOW, THEREFORE, BE IT RESOLVED THAT the District's Authorized Representative is authorized and directed to prepare, execute and submit to potential lenders applications for a commitment to make a loan, or other agreement for the extension of credit to the District, in an amount of up to $22,000,000, upon such terms and at such interest rate as the District's Authorized Representative determines to be fair and consistent with the marketplace for the purposes stated above.

FURTHER RESOLVED, that if a loan commitment is obtained, the Authorized Representative is authorized and directed to take any further actions and to execute, in the name of and on behalf of the District, any instruments and documents required by the lender to obtain such loan, including, without limitation, promissory notes, security instruments and other customary loan documents (which includes sale/leaseback documents which are used for financing purposes), it being the intention of the Board that the Authorized Representative shall have absolute, full and complete power and authority to execute and deliver to the lender any and all documents and instruments required to obtain and consummate such loan, and to take any further actions required to obtain and consummate such loan.

FURTHER RESOLVED, that the Board acknowledges and agrees that except to the extent prohibited by applicable law and any existing Bond documents, all property (real and personal), equipment, revenues, deposit accounts and other assets of the District may be used as security for any loan obtained pursuant to this Resolution.

IN WITNESS WHEREOF, I have hereto set my name as Secretary of the District, this ___20___ day of June, 2017.

_Michael Jamaica_

Mike Jamaica, Secretary

093734.000003 610927047.1





# HCCA
## Tulare Regional Medical Center

Tulare Local Health Care District
Board of Directors
Regular Meeting Agenda

Wednesday, July 26, 2017
Board Convenes at 4:00 p.m.

Evolutions Fitness & Wellness Center
Conference Room
1425 E. Prosperity Ave.
Tulare, CA 93274

I.   **CALL TO ORDER**
*-Chair of the Board*

II.  **CHAIR ANNOUNCEMENT**
- As a result of the recent special election on July 11, 2017, Senovia Gutierrez will replace Dr. Parmod Kumar as a Board member.

III. **CITIZEN REQUESTS/PUBLIC COMMENTS**

IV.  **APPROVAL OF MINUTES**

- Regular Board Meeting Minutes of June 28, 2017

   **Proposed Action**: Approval of Minutes for the June 28, 2017 Regular Board Meeting

V.   **OPEN SESSION AGENDA**

   A.   **Consent Agenda**

      1. **Request to approve the following Medical Executive Committee Policies:**

      None

      2. **Request to approve the following Tulare Local Health Care District (TLHCD) Hospital Policies:**

      None

   B.   **Report by Administration** - *HCCA Management*

      1. **Finance**

         a. Quarterly Financial Update



EXHIBIT
2

Board of Directors:
Linda Wilbourn          Parmod Kumar, MD       Richard Torrez      Michael Jamaica      Kevin Northcraft
Chairman and President  Vice Chairman          Treasurer           Secretary            Board Member

Tulare Regional Medical Center is a Division of Tulare Local Health Care District

Proposed Action: Acceptance of Quarterly Financial Statement

   2. **Other**

     a. Fiscal Year 2018 Budget Presentation

      Proposed Action: Approval of Fiscal Year 2018 Budget

  C. **Board of Directors Discussion/Action Items**

    1. **Board Member Reports**

  D. **Medical Staff Report** – *Ronald Ostrom, D.O., Chief of Medical Staff (or MEC representative)*

    1. **MEC Recommendations to the Board and Report of Actions**

     Proposed Action: Acceptance of MEC Recommendations

**VI.** **SUSPEND OPEN SESSION - ADJOURN TO CLOSED SESSION**

**VII.** **CLOSED SESSION**
   **Location:** Administration Office, 869 N. Cherry St., Tulare, CA 93274

  A. **Medical Executive Committee Report of Hospital Medical Audit or Quality Assurance Activities**
   *- Ronald Ostrom, D.O., Chief of Medical Staff (or MEC representative)*
   **MEC Reports relating to Peer Review, Credentialing, and Quality Assurance, pursuant to Health and Safety Code section 32155.**

  B. **Conference With Legal Counsel**
   **Significant exposure to litigation pursuant to Subdivision (d)(2) of Government Code section 54956.9:**
   - One (1) potential action

  C. **Conference With Legal Counsel**
   **Existing Litigation pursuant to subdivision (d)(1) of Government Code section 54956.9:**
   Discussion regarding *Ibarra v. Tulare Regional Med Center, David Smith, Douglas Middleton, Family Health Care Network, David Larios, and DOES 1 to 10*
   United States District Court, Eastern District of California Case No.: 1:16-cv-0039-LJO-BAM

  D. **Conference With Legal Counsel**
   **Existing Litigation pursuant to subdivision (d)(1) of Government Code section 54956.9:**
   Discussion regarding *Opper v. Tulare Regional Medical Center, et al.*
   Tulare County Superior Court Case No.: 263554

  E. **Conference With Legal Counsel**
   **Existing Litigation pursuant to subdivision (d)(1) of Government Code section 54956.9:**
   Discussion regarding *Lori Brooks v. Tulare Regional Medical Center*
   Tulare County Superior Court Case No.: VCU266862

  F. **Conference With Legal Counsel**
   **Existing Litigation pursuant to subdivision (d)(1) of Government Code section 54956.9:**
   Discussion regarding *Juanita Cabrera v. Tulare Regional Medical Center*
   Tulare County Superior Court Case No.: VCU268660

  G. **Conference With Legal Counsel**
   **Existing Litigation pursuant to subdivision (d)(1) of Government Code section 54956.9:**

Board of Directors:
Linda Wilbourn — Chairman and President | Parmod Kumar, MD — Vice Chairman | Richard Torrez — Treasurer | Michael Jamaica — Secretary | Kevin Northcraft — Board Member

611069561.1

Discussion regarding *Graham Prewett, Inc. v. Tulare Local Healthcare District*
Tulare County Superior Court Case No.: VCU269517

VIII.  **ADJOURN CLOSED SESSION/RECONVENE OPEN SESSION**
**Location:** Evolutions Fitness & Wellness Center, Conference Room
1425 E. Prosperity Ave., Tulare, CA 93274

- Public report of action taken in closed session, pursuant to Government Code section 54957.1

IX.  **ADJOURNMENT**

---

**NOTICE TO THE PUBLIC**

Tulare Regional Medical Center does not discriminate against any person on the basis of gender, religion, race, color, national origin, disability, or age in admission, treatment, or participation in its programs, services and activities, or in employment. For further information about this policy, contact: Bruce Greene of Baker & Hostetler LLP at telephone number (310) 442-8834 or by e-mail at bgreene@bakerlaw.com.

**PUBLIC COMMENT PERIOD FOR REGULAR MEETINGS**
At this time, members of the public may comment on any item of interest to the public that is within the subject matter jurisdiction of the Board (Gov't Code, § 54954.3(a)). Provided, however, the Board shall not take action on any item not appearing on the agenda unless the action is otherwise authorized by law. Any person addressing the Board will be limited to a maximum of three (3) minutes so that all interested parties have an opportunity to speak. If any individual causes disruption of the meeting, the Chair of the Board, after warning the speaker, may declare that the speaker is disrupting, disturbing, or impeding the orderly conduct of the meeting and order the speaker to leave the meeting room.

**OPEN SESSION AGENDA ITEMS**
All writings, materials and information provided to the Board for their consideration relating to any Open Session Agenda item of the meeting are available for public inspection during regular business hours at the Administration Office of the District located at 869 Cherry Street, Tulare, California.

**CLOSED SESSION AGENDA ITEMS**
As provided in the Ralph M. Brown Act, Government Code §54950 et seq., the Board may meet in closed session with members of its staff, employees and its attorneys. These sessions are not open to the public and may not be attended by members of the public. The matters the Board will meet on in closed session are identified in the Regular Meeting agenda. Any public reports of action taken in the closed session will be made in accordance with Government Code § 54957.1.

**COMPLIANCE WITH ADA**
The agenda shall be made available upon request in alternative formats to persons with a disability, as required by the Americans with Disabilities Act of 1990 (42 U.S.C. § 12132) and the Ralph M. Brown Act (Cal. Gov't Cod. § 54954.2). Persons requesting a disability related modification or accommodation in order to participate in the meeting should contact the Executive Office at (559) 685-3462, during regular business hours.

---

**Board of Directors:**

| Linda Wilbourn | Parmod Kumar, MD | Richard Torrez | Michael Jamaica | Kevin Northcraft |
| Chairman and President | Vice Chairman | Treasurer | Secretary | Board Member |

611069561.1

From: Greene, Bruce R. <bgreene@bakerlaw.com>
To: northea <northea@aol.com>
Cc: Linda Wilbourn <linda.wilbourn@comcast.net>; Richard Torrez <tacboxing@gmail.com>; benny <benny@healthcca.com>; Mike Jamalca <mikejamalca@sbcglobal.net>; sevonia <sevonia@live.com>
Sent: Fri, Jul 28, 2017 7:23 pm
Subject: Purported Board Meeting of TRMC

Mr Northcraft – I am responding to your email today at 4:48 pm addressed to Linda Wilbourn and Benny Benzeevl MD.

As I have informed you on several prior occasions, in my opinion, as counsel for the Board of Directors of the District, Ms. Gutierrez is not a member of the Board, and therefore (a) she had no right to join in the call for the special meeting on July 27, 2017 (b) that meeting was not a lawful meeting of the Board and (c) any actions which you, Mr. Jamalca and Ms. Gutierrez purported to take at that meeting have no legal force or effect.

I base my opinion on the very clear language in California Elections Code Sect. 15400, which provides that the winning candidate does not become a Board member until he or she is declared as such by the current Board. This has been confirmed in writing to be the proper procedure to be followed by the Tulare County registrar of voters. And since it is indisputable that the Board never even had an opportunity to declare Ms Gutierrez a member at the last general meeting, it is likewise indisputable that she is not a Board member and has no authority to act as such.

I must caution you that you, Mr. Jamalca, and Ms. Gutierrez are risking personal liability for taking these illegal actions, for which there will be no insurance coverage or indemnification rights under the District's Bylaws.

Bruce Greene
Partner

BakerHostetler
11601 Wilshire Boulevard | Suite 1400
Los Angeles, CA 90025-0509
T +1.310.442.8834
M +1.310.308.1003

bgreene@bakerlaw.com
bakerlaw.com

 

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content of this email is limited to the matters specifically addressed herein and may not contain a full description of all relevant facts or a complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore,



EXHIBIT
3

| From: | Greene, Bruce R. <bgreene@bakerlaw.com> on behalf of Greene, Bruce R. |
|-------|------|
| Sent: | Wednesday, August 23, 2017 3:07 PM |
| To: | Kevin Northcraft (northee@aol.com); Mike Jamaica (mikejamaica@sbcglobal.net); Richard Torrez (tacboxing@gmail.com) |
| Cc: | benny@healthcca.com |
| Subject: | TRMC Board Meeting Aug 23, 2017 |
| Attachments: | TRMC Resignation Letter Signed.pdf |

Attached is a letter from Linda Wilbourn resigning from the Board effective as of noon today. I have also received word from Richard Torrez that he will not be attending the Board meeting which is scheduled for this afternoon.

Accordingly, there can be no quorum of the Board at the scheduled meeting, and the meeting will be cancelled. Notice of cancellation will be duly posted.

Bruce Greene
Partner

BakerHostetler
11601 Wilshire Boulevard | Suite 1400
Los Angeles, CA 90025-0509
T +1.310.442.8834
M +1.310.308.1003

bgreene@bakerlaw.com
bakerlaw.com

 

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.



EXHIBIT
4

Linda Wilbourn
12499 Colony Ave
Tulare, CA93274

August 23, 2017 12:00 noon

Tulare Local Healthcare District
Board of Directors
Dr. Benny Benzeevi, CEO
Healthcare Conglomerate Associates
Bruce Greene, Baker & Hostetler LLP
TRMC Legal Counsel

Dear Bruce;

As I now serve as the Chairman of the Tulare Local Healthcare District Board of Directors, and this letter would be normally sent to the Chairman of the Board, I am sending it to you as legal counsel for the board. As of this date, noon, I am resigning my position as Chairman and as Director of Zone 5 of the Tulare Local Healthcare District.

When I was elected as Zone 5 Director, my only goal and agenda was to further the completion of the new tower project to bring our hospital into California state earthquake compliance before the 2030 state deadline. To my mind the every penny spent on or in the hospital hinges on the district finishing that tower. The very existence of the hospital is tied to the tower completion. Every day since I was elected to this board, I have worked towards that goal. Since November 2016, the board makeup has significantly changed their direction and agenda. My goals do not seem to mesh with theirs any longer. The completion of the Tower has now taken a back seat to personal agendas and egos. These agendas are not in the best interest of the District, the hospital, or the people who depend on our hospital for their healthcare, and I will not be a part of this takeover and I refuse to be caught in the quagmire of legal issues that I see coming very quickly.

I will be moving out of Zone 5 by the end of this year and I think it would be best if I leave the Board at this time.

Let it be known to all that EVERY and I repeat EVERY vote I have cast in both open and closed sessions have what I feel has been best for Tulare Regional Medical Center, the employees of that hospital and for all the people of Tulare Local Healthcare District. My votes have never been influenced by others, but what I felt were the best for TRMC. I have always believed that the unique partnership between the District and HCCA was an innovative solution to the success of our hospital. This could be the model for collaboration between private and public entities to save many District hospitals in California and even the US, if everyone opens their minds and starts thinking out of the box.

Please accept my resignation and pass it on to whoever is necessary to receive it. I give my sincere apologies to the folks in Zone 5 for not fulfilling my commitment. I have been their neighbor and friend for 41 years and I know there are some very good and bright people who can easily take my place.

I wish everyone connected with TRMC the best, especially the dedicated employee who make TRMC the wonderful hospital that it is. My family and I will always be supporters of TRMC and Tulare Hospital Foundation.

My best to you also. I know with your help and the firm of Baker & Hostetler's help, you have saved the District millions of dollars, and I personally thank you.

Sincerely,

Linda Wilbourn

| From: | Greene, Bruce R. <bgreene@bakerlaw.com> on behalf of Greene, Bruce R. |
| Sent: | Wednesday, August 23, 2017 4:00 PM |
| To: | Kevin Northcraft (northee@aol.com); Mike Jamaica (mikejamaica@sbcglobal.net); Richard Torrez (tacboxing@gmail.com) |
| Cc: | benny@healthcca.com |
| Subject: | TRMC Board Meeting Aug 23, 2017 |
| Attachments: | TRMC Resignation Letter Signed.pdf |

I was just advised by Linda that she intended her resignation to be effective tomorrow at 8AM, not today. So as of today, she is still a Board member. However, she is not able to attend the meeting this afternoon, and there is no quorum possible.

I apologize for any misunderstanding .

_____

Attached is a letter from Linda Wilbourn resigning from the Board effective as of noon today. I have also received word from Richard Torrez that he will not be attending the Board meeting which is scheduled for this afternoon.

Accordingly, there can be no quorum of the Board at the scheduled meeting, and the meeting will be cancelled. Notice of cancellation will be duly posted.

Bruce Greene
Partner

BakerHostetler
11601 Wilshire Boulevard | Suite 1400
Los Angeles, CA 90025-0509
T +1.310.442.8834
M +1.310.308.1003

bgreene@bakerlaw.com
bakerlaw.com

 

This email is intended only for the use of the party to which it is addressed and may contain information that is privileged, confidential, or protected by law. If you are not the intended recipient you are hereby notified that any dissemination, copying or distribution of this email or its contents is strictly prohibited. If you have received this message in error, please notify us immediately by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content of this email is limited to the matters specifically addressed herein and may not contain a full description of all relevant facts or a complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of inaccuracies as information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or contain viruses. Therefore, we do not accept responsibility for any errors or omissions that are present in this email, or any attachment, that have arisen as a result of e-mail transmission.



EXHIBIT
5

BakerHostetler

Baker&Hostetler LLP

11601 Wilshire Boulevard
Suite 1400
Los Angeles, CA 90025-0509

T 310.820.8800
F 310.820.8859
www.bakerlaw.com

August 28, 2017

Celtic Leasing Corp.
4 Park Plaza, Suite 300
Irvine, CA 92614

Re:  Lease Schedule No. 3826A01 (the "_Schedule_") to Master Lease No.
3826A (the "_Lease_") by and between Celtic Leasing Corp.
("_Lessor_") and Tulare Local Healthcare District ("_Lessee_")

Ladies and Gentlemen:

We have acted as special California counsel to Healthcare Conglomerate
Associates, LLC, the Manager of Lessee, in connection with the above-referenced
Lease between Lessee and Lessor.

In such capacity, we have reviewed the Lease and Lease Schedule (including
Addendum A).

In rendering our opinion, we have also examined such certificates of public
officials, organizational documents of Lessee, and other certificates and instruments as
we have deemed necessary for the purposes of the opinions herein expressed. As to
certain questions of fact material to our opinion, we have relied upon the certificate of
an officer of the Lessee (the "_Opinion Certificate_") and the representations of the
Lessee contained in the Lease. As to certain matters involving California election law,
we have relied upon the opinion of Michael L Allan, Esq, Allan Law Office, a copy of
which is attached hereto and made a part hereof by reference.

We express no opinion with respect to the effect of any law other than the laws
of the State California (the "_State_"), including, without limitation, the California Uniform
Commercial Code (the "_UCC_"), and the federal law of the United States (together with
the laws of the State, "_Applicable Law_").

Whenever our opinion herein is qualified by the phrase "to the best of our
knowledge" (or similar phrase), it is intended to indicate that the current, actual

Atlanta   Chicago   Cincinnati   Cleveland   Columbus   Costa Mesa   Denver
Houston   Los Angeles   New York   Orlando   Philadelphia   Seattle   Washington, DC

093734.000003 611224192.2


EXHIBIT
6

Celtic Leasing Corp.
August 28, 2017
Page 2

knowledge of the attorneys within the Los Angeles office of this firm engaged in the representation of Lessee in connection with the Lease transaction is not inconsistent with that portion of the opinion which such phrase qualifies. Except as expressed herein, we have made no independent investigation of any such matters and we have not made any other examination of Lessee.

Based on the foregoing, and subject to the qualifications and exceptions herein contained, we are of the opinion that:

1.      Lessee is a political subdivision of the State, to wit, a local healthcare district, duly organized and existing under the laws of the State, and specifically Section 32000 et seq of the California Health & Safety Code.

2.      The UCC and no other statute of the State, governs the creation, perfection, priority and enforcement of any security interest created by the Lease.

3.      Within the meaning of the UCC, Lessee is an unregistered organization, having its sole place of business or its chief executive office in the State. Lessee's true and correct legal name is stated above.

4.      Lessee is authorized and has power under State law to own its properties and incur and pay its obligations, to enter into the Lease, to lease the property described in the Lease and to carry out its obligations thereunder and the transactions contemplated thereby, including, without limitation, payment of all rental payments set forth in the Lease.

5.      Benny Benzeevi, M.D. is qualified and authorized to execute, on behalf of Lessee, any and all documents related to the Lease and Lease Schedule.

6.      Based upon Resolution No. 852 of the Lessee, which was adopted by the Board of Directors of the Lessee on June 20, 2017 (a copy of which is attached hereto), the Lease, including the lease of the property subject thereto and Lessee's obligations thereunder, has been duly authorized, approved, executed and delivered by and on behalf of the Lessee and is a valid and binding contract of Lessee, enforceable against Lessee in accordance with its terms.

7.      To the best of our knowledge, the authorization, approval and execution of the Lease and all other proceedings of Lessee relating to the transactions contemplated thereby have been performed in accordance with all open meeting, public bidding and other applicable laws, rules and regulations of the State.

8.      The execution of the Lease and the appropriation of moneys to pay the payments coming due under the Lease do not result in the violation of any constitutional, statutory or other governmental limitation relating to the manner, form or amount of indebtedness which may be incurred by Lessee.

9.      The accrual and payment by Lessee, and collection from Lessee, of the charges provided for in the Lease, including rental, interest, late fees, attorney's fees and other charges, do not and will not violate the constitution or any law of the State.

093734.000003 611224192.2

Celtic Leasing Corp.
August 28, 2017
Page 3

We express no opinion with respect to any documents other than the Lease and the Lease Schedule.

The foregoing opinions are subject to the following qualifications, limitations and exceptions:

(a)     The effect of bankruptcy, insolvency, fraudulent conveyance or transfer, reorganization, arrangement, moratorium or other similar laws relating to or affecting the rights, powers, privileges, remedies and interests of creditors, obligees or sureties including, without limitation, the effect of Sections 547 and 548 of the Federal Bankruptcy Code and comparable provisions of the laws of the State;

(b)     The effect of the limitations imposed by Applicable Law or rules or principles (of equity, public policy or otherwise) affecting the enforcement of obligations generally, whether considered at law, in equity or otherwise, including (without limitation) those pertaining to specific performance, injunctive relief, materiality, good faith, fair dealing, diligence, reasonableness, unconscionability, impossibility of performance, redemption or other cure, suretyship rights or defenses, waiver, laches, estoppel, or judicial deference or other equitable remedies;

(c)     The enforceability of any term or provision of the Lease that purportedly grants to a party or authorizes or permits a party or other person to exercise or otherwise enforce or pursue specific rights, powers, privileges, remedies or interests in a manner impermissible under or otherwise inconsistent with Applicable Law or public policy of the State from time to time in effect;

(d)     The unenforceability under certain circumstances of provisions in the Lease to the effect that rights or remedies are not exclusive, that every right or remedy is cumulative and may be exercised in addition to or with any other right or remedy, that election of a particular remedy or remedies does not preclude recourse to one or more other remedies, and that any right or remedy may be exercised without notice or an opportunity to cure;

(e)     The unenforceability under certain circumstances of any term or provision in the Lease indemnifying a party against liability for its own wrongful or negligent acts or where such indemnification is contrary to public policy or prohibited by Applicable Law;

(f)     The enforceability of any term or provision in the Lease purporting to assign contractual rights, to the extent such provisions are limited by requirements of notice to and consent of any third parties to such contracts or other interested parties, or any other restrictions as to the assignability of such contractual rights;

(g)     The effect of the provisions of the UCC which require a secured party, in any disposition of personal property collateral, to act in good faith or in a commercially reasonable manner;

093734.000003 811224192.2

Celtic Leasing Corp.
August 28, 2017
Page 4

(h)   Any rights under the Lease which are governed by the UCC are subject to the limitations and restrictions of the UCC which such statute provides cannot be waived;

(i)   We express no opinion as to the existence, validity, binding effect, enforceability, attachment, perfection or priority of any security interest or lien created or purported to be created under the Lease;

(j)   There may be limitations on the exercise of the Lessor's remedies arising out of any failure by the Lessor to comply with statutory requirements or judicial decisions thereunder in the actual exercise of its rights in connection with the foreclosure, sale or other enforcement of its security interests in any of the Equipment;

(k)   We express no opinion as to whether or not the Lease transaction will be treated for federal and state income tax purposes as a true lease, or as a financing transaction.

(l)   Our opinions in Paragraphs 5 and 6 above are based solely upon the Opinion Certificate and the Allan Law Office opinion.

In our opinion, the foregoing qualifications, limitations and exceptions do not render the Lease invalid as a whole, and there exist, in the Lease or pursuant to Applicable Law, legally adequate remedies for a realization of the principal benefits and/or security intended to be provided by the Lease.

We advise Lessor that circumstances can occur after the perfection of a security interest in personal property which could cause the security interest to become unperfected, including, without limitation, the fact that a financing statement lapses after five years; the UCC creates certain limitations on the rights to proceeds; a change in the name of the debtor or the location of the debtor will result in the security interest in certain property to become unperfected unless appropriate steps are taken; and a secured party's rights are subject to the rights of certain purchasers of the collateral to acquire the collateral free of the security interest.

To the extent that the obligations of Lessee may be dependent upon such matters, we assume that: Lessor is duly formed, validly existing and in good standing under the laws of its jurisdiction of formation; Lessor has the requisite power and authority to execute and deliver the Lease and to perform its obligations under the Lease; the Lease has been duly executed and delivered by Lessor, and constitutes the legally valid and binding obligation of Lessor, enforceable against Lessor in accordance with its terms; there are no other documents, understandings, or agreements (whether written or oral) between or among the parties which would expand, modify or otherwise affect the obligations of the parties under the Lease, the documents submitted to us contain therein all the terms intended by the parties.

We have also assumed that:

(1)   The Lease transaction is not being entered into for any personal, family or household purposes.

093734.000003 811224192.2

Celtic Leasing Corp.
August 28, 2017
Page 5

     (2)    Lessee has "rights" (within the meaning of Section 9203 of the UCC) in the Equipment, and value has been given by the Lessor to Lessee in connection with the transactions contemplated by the Lease.

     This opinion is intended solely for the benefit of the Lessor and its successors and assigns in connection with the Lease transaction. No part of this opinion may be relied upon by any other person or for any other purpose, be incorporated, quoted or otherwise referred to in any other document or communication or be filed with or otherwise furnished to any governmental authority or other person without our prior written consent, except that our prior written consent is not needed to furnish a copy of this opinion: (a) in connection with any proceedings relating to the Lease or the enforcement thereof; and (b) to accountants and legal counsel for the Lessor (each of whom may rely upon this opinion as though it had been addressed and delivered to them as of the date of this opinion). In all cases, reliance upon this opinion is conditioned upon acceptance of all of the qualifications, exceptions, assumptions, definitions, exclusions and other limitations set forth herein.

     This opinion speaks only as of the date hereof, and to its addressees and their successors and assigns, and we have no responsibility or obligation to update this opinion, to consider its applicability or correctness to anyone other than its addressees, and their successors and assigns, or to take into account changes in law, facts or any other developments of which we may later become aware.

     Very truly yours,

     BAKER & HOSTETLER LLP

093734.000003 611224192.2

## RESOLUTION NO. 852 OF THE BOARD OF DIRECTORS OF
## TULARE REGIONAL MEDICAL CENTER

WHEREAS, the Board of Directors (the "Board") of Tulare Local Healthcare District dba Tulare Regional Medical Center (the "District") has determined that it is necessary and appropriate; and in the best interests of the District to borrow funds to cover operating cash flow; and

WHEREAS, the Board has determined that it is necessary and appropriate, and in the best interests of the District, to have its manager, Healthcare Conglomerate Associates, LLC ("HCCA"), acting through its Chairman, Benny Benzeevi, M.D ("Authorized Representative") seek to obtain a loan for the purposes of payment of operating expenses of the Hospital, repayment of debt, payment of ongoing costs of construction of the Tower project, and for other Hospital purposes.

NOW, THEREFORE, BE IT RESOLVED THAT the District's Authorized Representative is authorized and directed to prepare, execute and submit to potential lenders applications for a commitment to make a loan, or other agreement for the extension of credit to the District, in an amount of up to $22,000,000, upon such terms and at such interest rate as the District's Authorized Representative determines to be fair and consistent with the marketplace for the purposes stated above.

FURTHER RESOLVED, that if a loan commitment is obtained, the Authorized Representative is authorized and directed to take any further actions and to execute, in the name of and on behalf of the District, any instruments and documents required by the lender to obtain such loan, including, without limitation, promissory notes, security instruments and other customary loan documents (which includes sale/leaseback documents which are used for financing purposes), it being the intention of the Board that the Authorized Representative shall have absolute, full and complete power and authority to execute and deliver to the lender any and all documents and instruments required to obtain and consummate such loan, and to take any further actions required to obtain and consummate such loan.

FURTHER RESOLVED, that the Board acknowledges and agrees that except to the extent prohibited by applicable law and any existing Bond documents, all property (real and personal), equipment, revenues, deposit accounts and other assets of the District may be used as security for any loan obtained pursuant to this Resolution.

IN WITNESS WHEREOF, I have hereto set my name as Secretary of the District, this ___20___ day of June, 2017.

Mike Jamaica, Secretary

093734.000003 610927047.1

**MICHAEL L. ALLAN**
ATTORNEY AT LAW
2181 EAST FOOTHILL BOULEVARD
SUITE 102
PASADENA, CALIFORNIA 91107

TELEPHONE
(626) 683-7027 (D)

FACSIMILE
(626) 683-7032

August 25, 2017

<u>By Email</u>

Bruce R. Greene, Esq.
Baker & Hostetler LLP
11601 Wilshire Blvd, Ste 1400
Los Angeles, CA 90025 - 0509

    Re:    Tulare Local Hospital District Special Election Aftermath
              Has Senovia Gutierrez commenced her term of office as a TLHD Director

Dear Mr. Greene:

Thank you for the opportunity to provide you with this analysis regarding the above referenced matter. You have asked me to discuss the aftermath of the Tulare Local Healthcare District ( the "Board" or "TLHD") recall and special election of July 11, 2017 (the "Special Election"), specifically whether the candidate elected to replace a sitting director removed through the recall process may be considered as having commenced her term of office.

I have previously performed legal services for a TLHD director. To the best of my knowledge, the interests of my former client and those of the TLHD are not adverse to each other, and no actual or potential conflict of interest exists or threatens to come into existence which would prevent me from presenting my analysis to you. Further, in that prior capacity, I became acquainted with certain facts pertinent to this matter, which are set forth below. You have not provided to me a separate set of facts or additional facts for this analysis or otherwise.

In making this opinion, I have reviewed various legal sources, including the California Election Code and its legislative history, and case law arising therefrom, published guidelines of the California Secretary of State and Tulare Registrar of Voters regarding elections, and recalls, the Tulare County Code. I have based my analysis on such statutes, case law, regulations, and decisions and published statements of the State of California, and its local subsidiaries (the "Applicable Law").

When my statements herein are qualified by the phrase "to the best of my knowledge", or a similar phrase, it is intended to indicate that my actual knowledge of the facts in this matter is not inconsistent with the statement that is qualified by such phraseology.

This opinion is based upon my understanding that the facts set forth below are true and that there are no other relevant or contrary facts that would be necessary to formulate this opinion. To the extent that these assumptions of facts are misplaced or other material facts exist, I reserve the right to change this opinion in whole or in part. This opinion is subject to the

foregoing limitations, and subject further to the qualifications and exceptions set forth herein,

My understanding of the facts is as follows:

A.  Facts Assumed:

The Special Election was held July 11, 2017 for the purposes of recalling a Director of the Tulare Local Healthcare District (TLHD), and, if the recall were successful, replacing the recalled Director.  The TLHD Board consists of five (5) directors elected to represent various districts within the TLHD, which encompass the City of Tulare and various areas of Tulare County.  Three (3) directors participating in a meeting constitute a quorum.  The Special Election was held, a director was recalled and a replacement was elected in the person of Senovia Gutierrez ("Gutierrez"), who apparently received a majority of the votes cast to replace the recalled director.

Following the election, a recount was timely requested and performed.  The success of the recall was confirmed, Gutierrez was confirmed by the Tulare Registrar of Voters (the "RoV") as the candidate who received sufficient votes to replace the recalled Director.

On July 25, 2017, Ms. Gutierrez and two allied members of the Board held an event, where a third director also attended but did not speak, at which Ms. Gutierrez was proclaimed victor and she purported to orally take the oath of office.  However, at that time, no certification of the election had been provided to the Board, and no legal notice had been provided regarding said event, and no declaration of the election under Elections Code Sec. 15400 had been made.  Ms. Gutierrez apparently also signed an oath of office on July 25, 2017, and apparently provided it to the RoV rather than to the Secretary or Clerk of the TLHD as required by statute.  On that date, the RoV prepared and overnighted a letter to the TLHD Secretary which included, inter alia, the certification of the results of the Special Election, and at least a copy of the oath document subscribed by Gutierrez.  How the oath document made it into the RoV's correspondence package for a Fed Ex delivery when Gutierrez's taking of the oath was broadcast, inter alia, through facebook live feed in the evening of that same day is not explained.

On July 26, 2017, the very day of the next regularly scheduled meeting of TLHD, the RoV provided the certification of the election results to the TLHD, allowing insufficient time for a declaration of the election under Elections Code Section 15400 to be noticed to the public.  Two of the current directors (the "dissenting directors") demanded that the Chairman place the declaration on the meeting agenda and declare the election, which the Chairman declined citing the late delivery of the Certification to TLHD, and Brown Act concerns regarding proper notice.  The dissenting directors then declined to participate in the Board meeting, even so as to place the declaration of the election on a subsequent agenda, and walked out.  A quorum could not be reached.  Since the July 26, 2017 regular Board meeting, the dissenting directors and Ms. Gutierrez have failed to attend a regular Board meeting or cooperate with the two other directors to schedule a meeting or to otherwise attend to Board business.

Initially, the dissenting directors and Gutierrez claimed that the July 25th meeting was valid event where she was sworn and joined the Board.  Later, they took the position that the

event was only ceremonial and therefore exempt from Brown Act notice and like considerations. Following the July 26, 2017 regular meeting of th Board, the two dissenting Directors and Ms. Gutierrez instead of participating in regular Board meetings have participated in several events which they have characterized as Special Board meetings, but which events were held apparently without legal notice, were called and attended by only the two dissenting directors and the unseated Ms. Gutierrez, and which lacked legal quorums. At one such event, the dissenting directors and Ms. Gutierrez purported to adopt various statements and resolutions on behalf of the TLHD, including voting to rescind Resolution 852, which authorized HCCA, the manager of the District (acting through its Chairman, Dr. Benny Benzeevi) to enter into loans on behalf of the District and to terminate the District's representation by the Baker Hostetler firm. They also voted to seat Ms. Gutierrez, at some point.

Applicable Law:
       *General Election Laws of California Govern*
       While TLHD is a special district for various purposes under the law, the Uniform District Election Law, Govt. Code Secs. 10500 - 10556 do not appear applicable as the TLHD was formed prior to the institution of the Uniform District Election Law in 1994. Provision in statute for action required by the RoV, TLHD, and Gutierrez in the aftermath of the Special Election include Elections Code Section 15372 and Elections Code Section 15400. Government Code Section 1303 speaks to requirements of qualification for office after an election. Government Code Section 5602 identifies TLHD as the governing body for purposes of this analysis. Government Code Section 11384 provides inter alia for removal of a recalled officer after qualification of his successor. Government Code Section 11386 mandates a time frame for a successful candidates qualification for office. Bylaws of TLHD as adopted, specifically regarding provisions for the calling of meetings and quorums.

Discussion:
       *Procedure Following Election*
       Following the Special Election, the RoV, TLHD, and Gutierrez are obliged to follow certain post election procedures which provide for her accession to office.

              RoV Provision of Certified Election Results
              Elections Code Section 15372 provides that the Registrar of Voters ("RoV") will forward to the TLHD, as the governing body, a certified statement of the results of the election. The same is forwarded to the successful candidate in accord with Elections Code Section 15401. As noted above, to the best of my knowledge, the RoV provided the certified statement to TLHD and it was received on the day of the regular Board meeting for July 2017.

              Declaration of Election
              Following receipt of the certified statement of the election results from the RoV, the governing body, TLHD, must formally declare the election pursuant to Election Code Section 15400. Elections Code Section 15400 provides, in pertinent part, that the governing body "shall declare elected ... to each office voted on at each election under its jurisdiction the person having the highest number of votes for that office..." The TLHD is the governing body in this matter as provided in Government Code Sec. 5602. The specific action which constitutes a

declaration of election results by the governing body is not set forth in statute. However, in the case *Brown v. Hite*, 64 Cal.2d 120, the court describes the issuance of a declaration of election as "a certificate commemorating an event that has already occurred." *Brown*, 64 Cal..2d at 127 The issuance of a certificate is more than a mere announcement from the podium by a director, but rather appears to require the affirmative action of the Board.. The Board can only take action by motion or resolution (Bylaws, Article II, Sec. 2,c.) with the existence of a quorum, (Bylaws, Article II, Sec. 2.a.) and no quorum has occurred since the June, 2017 regularly scheduled meeting of the Board. Hence, the Board has been unable to notice and take action to declare the election.

### A) Interpretation of Elections Code Section 15400

Decisions interpreting Elections Code Section 15400 or its predecessor statutes are not abundant. In *Brown v. Hite* (1966) 64 Cal.2d 120, ostensibly providing its decision under the regime of a former elections code section iteration, the California Supreme Court stated that as regards judicial candidates a prevailing candidate is elected on the day of the election and not on the day the results of the election are officially declared. "...if an election is in fact held, the prevailing candidate is elected on the day of the election (cf. *Bowring v. Dominguez* (1935) 3 Cal.2d 167, 168) and not on the day the results are declared". *Brown v. Hite* at 127 In so doing, the Court referred to the declaration as a formality, commemorating an event that has already occurred. *Brown v. Hite, 64 Cal.2d* at 127 Only four published cases cite to the *Brown* decision, three of which pertain specifically to the election of judges, and the fourth pertaining to the court discussion of limitations on its powers with respect to legislative enactments in the context of an insurance litigation. *Topa Ins. Co. V. Fireman's Fund* 39 Cal.App.45h 1331, 1341

The legislature has amended former Elections Code § 15400, which was enacted by in 1961, amended by in 1963, and partially repealed in 1976, and then included in an amendment intended to reorganize and clarify the Elections code, and provided "only technical and nonsubstantive effect" in 1994. Regarding the 1994 amendment and reorganization, the legislative notes refer to a lack of intention to add or subtract rights and obligations as a result of said amendment. Decrings, California Codes, Note re: Stats 1994, ch 920, re: Sec. 3. Elections Code Section 15400 remains substantively intact. The failure to substantively change or eliminating the provisions of that Section, suggests that the legislature decided that the declaration of the election by the governing body would continue as part of the post-election process.

### B) Local Governing Bodies Regularly Comply with E.C. Sec 15400

Local governing bodies, including cities, counties, and local districts, regularly comply with the obligation to formally declare election results in accord with the provisions of Elections Code Section 15400. Citing to the obligations upon governing bodies set forth in Elections Code Section 15400, formal written declarations of election results by resolution requiring a motion, seconding, and a subsequent vote are normal procedure for compliance, as in, for example, the Stanislaus County Board of Supervisors, the San Francisco County Board of Supervisors acting, including when acting, inter alia, for the BART District Board of Directors, the local Community College District, the San Francisco Unified School

District, and the San Francisco Superior Court, the City of Palo Alto and the City of Oakland. Additionally, declarations of election are included as formal agenda items for meetings, including, e.g. the Santa Clara County Board of Education, the Napa County Board of Supervisors, and the Alameda County Board of Supervisors. The TLHD is required by its Bylaws to take action only by motion or resolution, and therefore would require formal action at a meeting having a quorum so as to comply with Elections Code Section 15400. (Bylaws, Article II, Sec. 2.c.)

Governing body compliance with Elections Code Section 15400 is pursuant to recommendations from their respective Registrar of Voters and governing body staff, including for example the staff of the County Clerk Recorder (Elections) of the County of Stanislaus, the County Clerk/Recorder/Assessor for the County of Sonoma, office of the City Clerk of Palo Alto, the Assessor-Recorder-County Clerk as Ex-officio Registrar of Voters for Napa County as of 2006, and the Registrar of Voters of Alameda County. As regards the matter at hand, the Tulare County RoV set forth her recommendation that the TLHD comply with Elections Code Section 15400 (See Letter to TLHD from RoV of 07/25/2017). The County Clerk/Assessor/Recorder of the County of Sonoma has opined further in pertinent part that the County's failure to comply with its obligation to declare the election results would "result in elected candidates not taking office". (See Agenda Item Summary Report, Requested Board Action, 12/14/2010) In addition, the School and College Legal Services of California ("SCLS), a joint power authority serving school and college districts, has advised its constituent superintendents that making a declaration of election is required pursuant to Elections Code Section 15400. (SCLS Legal Update 09/20/2016 to Superintendents of Member Districts)

*C) Election and Commencement of Term are Different Concepts*
Various statutes discuss the times following an election when an elected person may take office, separating the concept from that of the election itself. Further, the court in *Brown* cites to *Bowring v. Dominguez* (1935) 3 Cal.2d 167 in which the Court again discusses eligibility of judicial candidates for office, and in so doing recognizes a distinction between election to office and the commencement of the term of office by citation to and discussion of the decision in *Ward v. Crowell*, 142 Cal. 587, 76 P. 491 (Cal. 1904) in which a County officer was eligible to take office based on the timing of his receipt of certain professional certifications required for such office. The Court noted the earlier decision as stating that "it was sufficient in order for him to legally hold office after after his election that he receive such a certificate before his term of office commenced" *Bowring* at 170 Hence, the Court, in *Ward v. Crowell* and in *Bowring*, tacitly recognizes that election and the commencement of a term of office are two separate matters. See *Ward v. Crowell*, 142 Cal. 587, 76 P. 491 Note: The *Ward* case has been distinguished by two subsequent cases concerning the applicability of conditions to office holding when the time for the existence of conditions is not specified in statute or constitution.

Qualification of Gutierrez
As the successful candidate, Ms. Gutierrez must have been qualified for office within ten (10) days after receiving the certification of the election from the RoV. See Govt. Code Sec. 11386 To qualify, Ms. Gutierrez must have subscribed to the Oath of Office and filed the original of the same with the Clerk or Secretary of TLHD, pursuant to Government Code

Section 1303. Note: If Ms. Gutierrez is deemed to have failed to file the original oath of office with the TLHD's Clerk or Secretary, then it becomes arguable that the office to which she was elected "shall be vacant, and shall be filled according to law." Govt Code Sec. 11386 Note: The recalled Director is not removed from office until the qualification of his successor. Govt Code Sec. 11384

### Special Meetings Called By Dissenting Directors After July 26, 2017

Following the July 26, 2017 regular meeting of th Board, the two dissenting Directors and Ms. Gutierrez instead have participated in several independent events which they have characterized and represented as Special Board meetings. Those events were held without requisite and timely legal notice, and in addition were called by only the two dissenting directors, Jamaica and Northcraft. Ms. Gutierrez's participation in any call for a meeting is, as yet, irrelevant as she is not a seated director as discussed above. The Tulare Local Health Care District Bylaws, adopted May 22, 2013 (the "Bylaws") governs, inter alia, meetings of the Board of Directors of TLHD, including their calling and the formation of quorums. The Bylaws at Article II, Sec. 1.b. provide that a Special Meeting of the TLHD may be called by three (3) directors, not merely two. Said subsection also requires that such meetings be held in compliance with the Ralph M. Brown act by timely publication of notice of any such meeting. However, in addition to disqualification of any such purported meeting or associated action taken in potential violation of the Brown Act arising from lack of appropriate and sufficient legal notice, such events were not called in compliance with the Bylaws, and do not constitute valid Special Meetings of TLHD, having been called by only two directors, Northcraft and Jamaica, and notably lacking a quorum. The Bylaws, at Article II, Section 2.a., provides that a majority of the directors constitutes a quorum for the transaction of business, and only two of the four (4) sitting directors were present at the purported special meetings. Hence, any actions purportedly undertaken at such improperly called purported special meetings lacking a quorum do not have any binding effect upon TLHD or its other directors, and do not constitute legal acts of TLHD.

Conclusion:

A multi-step process following the election of a TLHD Director is required for Gutierrez to take office. 1) The RoV must provide a certified statement of the election results to the TLHD as the governing body, and to the successful candidate within thirty (30) days of the election; 2) TLHD must thereafter declare the election, an action which is not defined in the code, but which case law suggests is more than a mere announcement from the dais and may require affirmative action of the Board, which itself requires a quorum at a meeting of the Board; 3) Gutierrez must, within 10 days after receipt of the certified statement of election from the RoV, subscribe to her oath of office and file it with the Clerk or Secretary for the TLHD.

The failure of the dissenting directors to participate in meetings of the Board, and achieve a quorum since the June regular meeting of the TLHD, has prevented TLHD from making the declaration of election required in Elections Code Section 15400. Further, I am aware of no facts to suggest that Ms. Gutierrez has filed the original of her oath of office with the Secretary or Clerk of TLHD, or that she filed the same within the mandated ten (10) days of her receipt of the certified statement of election from the RoV.

The known facts suggest that compliance with statutory procedure required to commence Ms. Gutierrez term of office has not taken place, and she is not yet a director. Further, if Ms. Gutierrez has failed to subscribe her oath and file it with TLHD within the time frames set forth in Government Code Section 1303, the office to which she was elected may be deemed to have fallen vacant.

Acts purportedly taken by Ms. Gutierrez in concert with the dissenting directors, at improperly called purported special meetings lacking a quorum, are attempted without compliance with the Bylaws or with California law regarding such meetings. A special meeting of the Board cannot be called by only two directors of four, and therefore the events called by the dissenting directors and Gutierrez do not constitute valid meetings of the Board pursuant to the Bylaws. Such invalidity is in addition to their potential illegal nature under the Ralph M. Brown Act. Further lacking a quorum of the sitting directors, no action taken at such a purported meeting would have any binding force or effect.

This opinion is based on the foregoing assumptions of fact and law discussed herein. I have not located any other statutes, cases, or regulations other than those expressed herein that are material to my opinion. To the extent that such other statutes, cases, regulations, regulatory council opinions, district council opinions, and attorney general opinions exist, I reserve the right to modify this opinion in whole or in part based on such other factors. My assumptions of fact and law are set forth herein, and there are no implied and unstated assumptions of fact or law. I am expressing no opinion with respect to any facts or the application of law to such facts, other than as are set forth above.

The foregoing analysis is subject to the following qualifications, limitations and exceptions:

a) There may be facts concerning post-election actions, statements, and other facts effecting the electoral status candidate Gutierrez, and the occurrence of law and regulation of which I am unaware, whether by reason of lack of public promulgation or otherwise;

b) There may be changes of law, regulation, and ideas of enforcement and interpretation of the same which may have been considered or initiated since the time of the Special Election which have not been publicly promulgated and of which I am unaware which may effect the analysis applied to the facts concerning the aftermath of the Special Election and the electoral status of Gutierrez;

c) The undersigned is aware of no Charter or similar document governing the TLHD which would exempt the recall, election, and seating of directors from the general election law;

d) This analysis has been provided in an unusually abbreviated time frame at your request, and such abbreviated time frame has limited my ability to research and analyze the question presented.

I reserve the right to amend this opinion in whole or in part, based upon such later

MICHAEL L. ALLAN, ESQ.
Letter:  Bruce Greene, Baker & Hostetler, LLP
Date:  August 25, 2017
Page 8 of 8

discerned facts and law as may become available.

Subject to the reservations and conditions set forth herein, this opinion may be relied upon for purposes relating to its subject matter.

Thank you for your anticipated attention to this matter.  Should you have any questions or comments, please contact me directly in writing by means of my email account.

Very truly yours,

Michael L. Allan, Esq.

06-Dec-17                                                   06Dec17-1288

**THIS ITEM IS PART OF A LEGAL STATEMENT RECONSTRUCTION**
**GROUP ID G06Dec17-1288**
Sequence number 004790375877  Posting date 13-Sep-17  Amount 499727.93

---

**HCCA**

JPMorgan Chase Bank, N.A.

0 6 1 0 2 0 1 7
DATE M M D D Y Y Y Y     1400

Pay To: Babor&Hosseier                 ''498,727.93

Amount: FOUR-HUNDRED-NINETY-NINE-THOUSAND-SEVEN-HUNDRED-TWENTY-SEVEN AND 93/100''

Void after 90 days

Memo   HLCA fees in TJLhC, for farmer TABmC brocher can. 349(11453,14459,25281,24012,2401),25508,29910,3-81 05,29008,24079,34088,34061,34462,30091,36863,3610 manzecho bank encement service 0,38101,+48+3,4469),49694,49695,49697,48015,46643 Vanily all philitide machen 31664,70-453,65717,60564')

.:322271627.:    550570677.'    1400     ⑂499727931⑂

---

DDA 00035493100Q237 Lkx 0670189 CLE Batch 0670327 Seq 000008 Date 20170913

CREDIT TO DDA BILLING ACCOUNT
ABSENT ENDORSEMENT GUARANTEED
BANK LA NATIONAL ASSOCIATION
0070189-000354931000237<CLE



EXHIBIT



| #1 | |
|---|---|
| Posting Date: 20170925 | |
| Sequence Number: 5890211370 | |
| Amount: 510,000.00 | |
| Account: 608002234 | |
| Routing Transit Number: 12210002 | |
| Check/Serial Number: 009571302392 | |
| Bank Number: 601 | |
| IRD Indicator: 0 | |
| BOFD: 000000000 | |
| Capture Source: PV | |
| Entry Number: 0000006839 | |
| UDK: 60117092500589021370 | |
| Cost Center: | |
| Teller Number: | |
| Teller Sequence Number: | |
| Missing Image: 5 | |
| PE Indicator: N | |
| Application Code: 1 | |
| Trancode: 000000 | |
| DB/CR: DB | |
| Item Type: P | |
| Processing Date: | |

132096551

Copyright © 2010 J.P. Morgan Chase & Co. All Rights Reserved



EXHIBIT

|||||||||||||||||||||||||||||||||||||||||||||||||||

2017-0059339                                        4

RECORDING REQUESTED BY:
Chicago Title Company
Order No.:

Recorded
Official Records
County of
Tulare
ROLAND P. HILL
Clerk Recorder

REC FEE        31.08

COPY - RECORDS E.C.

When Recorded Mail Document To:

2 +1
Copy

Healthcare Conglomerate Associates, LLC
10940 Wilshire Boulevard
Suite 1600
Los Angeles, CA  90024

08:01AM 28-Sep-2017

JD
Page   of 4

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS

THIS DEED OF TRUST, is made as of September 27, 2017 by Tulare Local Healthcare District, d/b/a Tulare Regional Medical Center, herein called TRUSTOR, whose address is 869 N. Cherry Street, Tulare, California 93274

to Chicago Title Company, a California corporation, herein called TRUSTEE, for the benefit of Healthcare Conglomerate Associates, LLC, herein called BENEFICIARY,

WITNESSETH:  That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in the County of Tulare, State of California, commonly known as 1425 East Prosperity Avenue, Tulare, California, 93274, as more particularly described as:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph ten (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.

For the Purpose of Securing:

1. Performance of each agreement of Trustor incorporated by reference or contained herein.

2. Payment of the indebtedness evidenced by those certain Promissory Notes dated as of 7/31/2015; 7/31/2016; 12/21/2016; 12/28/2016; 12/29/2016; 12/30/2016; 12/30/2016 B; 3/31/2017, 7/21/2017, and 7/31/2017, in the total original principal sum of Ten Million Two Hundred Thirty-Three Thousand Nine Hundred and Fifty Dollars And 05/100 Dollars ($10,233,950.05) executed by Trustor in favor of Beneficiary or order.

3. Payment of such further sums as the then record owner of said property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured

OHSUSA:767424224.2



EXHIBIT
9

## SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS
### (continued)

To Protect the Security of this Deed of Trust, Trustor Agrees: By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions one (1) to fourteen (14), inclusive, of the fictitious deed of trust recorded in Santa Barbara County and Sonoma County October 18, 1961, and in all other counties October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Kings | 792 | 833 | Placer | 895 | 301 | Sierra | 29 | 335 |
| Alpine | 1 | 250 | Lake | 362 | 39 | Plumas | 151 | 5 | Siskiyou | 468 | 181 |
| Amador | 104 | 348 | Lassen | 171 | 471 | Riverside | 3005 | 523 | Solano | 1105 | 182 |
| Butte | 1145 | 1 | Los Angeles | T2065 | 899 | Sacramento | 4331 | 62 | Sonoma | 1851 | 689 |
| Calaveras | 145 | 152 | Madera | 810 | 170 | San Benito | 271 | 383 | Stanislaus | 1715 | 456 |
| Colusa | 296 | 617 | Marin | 1508 | 339 | San Bernardino | 5567 | 61 | Sutter | 572 | 297 |
| Contra Costa | 3978 | 47 | Mariposa | 77 | 292 | San Francisco | A332 | 905 | Tehama | 401 | 289 |
| Del Norte | 78 | 414 | Mendocino | 579 | 530 | San Joaquin | 2470 | 311 | Trinity | 93 | 366 |
| El Dorado | 568 | 456 | Merced | 1547 | 538 | San Luis Obispo | 1151 | 12 | Tulare | .2294 | 275 |
| Fresno | 4626 | 572 | Modoc | 184 | 851 | San Mateo | 4078 | 420 | Tuolumne | 135 | 47 |
| Glenn | 422 | 184 | Mono | 52 | 429 | Santa Barbara | 1878 | 860 | Ventura | 2052 | 386 |
| Humboldt | 657 | 527 | Monterey | 2194 | 538 | Santa Clara | 5336 | 341 | Yolo | 653 | 245 |
| Imperial | 1091 | 501 | Napa | 639 | 86 | Santa Cruz | 1431 | 494 | Yuba | 334 | 486 |
| Inyo | 147 | 598 | Nevada | 305 | 320 | Shasta | 684 | 528 | | | |
| Kern | 3427 | 60 | Orange | 5889 | 611 | San Diego | Series 2 Book 1961, Page 183887 | | | | |

which provisions, identical in all counties, (printed on the attached unrecorded pages) are hereby adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that Trustor will observe and perform said provisions; and that the references to property, obligations and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

IN WITNESS WHEREOF, the undersigned has executed this document on the date set forth below.

Tulare Local Healthcare District, d/b/a Tulare Regional Medical Center

By: _____        CEO

Dated: _____9.22.2017_____

## SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS
(continued)

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy or validity of that document

State of California
County of Tulare

On September 27, 2017 before me, Melissa S. Arend, Notary Public (here insert name and title of the officer), personally appeared Yomi Benny Benzeevi, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature Melissa S. Arend (Seal)

MELISSA S. AREND
Commission # 2113102
Notary Public - California
Tulare County
My Comm. Expires May 26, 2019

OHSUSA:767424234.2

## SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS
(continued)

## EXHIBIT "A"
Legal Description

Real property in the City of Tulare, County of Tulare, State of California, described as follows:

PARCEL 1 AND REMAINDER OF PARCEL MAP NO. 4531, IN THE CITY OF TULARE, COUNTY OF TULARE, STATE OF CALIFORNIA, AS PER MAP RECORDED AUGUST 23, 2002 IN BOOK 46, PAGE 36 OF PARCEL MAPS, TULARE COUNTY RECORDS.

EXCEPTING THEREFROM AN UNDIVIDED ONE-HALF OF ALL THE MINERALS, GAS, OILS, PETROLEUM, NAPHTHA AND OTHER HYDROCARBON SUBSTANCES IN, ON OR UNDER SAID LAND, TOGETHER WITH ALL RIGHTS INCIDENTAL TO THE DEVELOPMENT OF SAME, AS EXCEPTED IN THE DEED FROM SECURITY-FIRST NATIONAL BANK OF LOS ANGELES, A NATIONAL BANKING ASSOCIATION, TO C. E. SWEARINGEN AND CLARA B. SWEARINGEN, HUSBAND AND WIFE, DATED SEPTEMBER 29, 1936, RECORDED NOVEMBER 30, 1936 IN BOOK
704, PAGE 316 OF OFFICIAL RECORDS.

APN:
171-300-015-000 as to Parcel 1 171-300-016-000 as to Remainder

OHSUSA:767424224.2

1  James A. Murphy - 062223
   JMurphy@mpbf.com
2  Harlan B. Watkins – 176458
   hwatkins@mpbf.com
3  John P. Girarde – 191518
   jgirarde@mpbf.com
4  MURPHY, PEARSON, BRADLEY & FEENEY
   88 Kearny Street, 10th Floor
5  San Francisco, CA  94108-5530
   Tel:    (415) 788-1900
6  Fax:    (415) 393-8087

7  Attorneys for Defendants
   **BAKER & HOSTETLER LLP, and**
8  **BRUCE GREENE, ESQ.**

9

10               **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

11                    **IN AND FOR THE COUNTY OF TULARE**

12

13  TULARE LOCAL HEALTHCARE DISTRICT,      Case No.: 278333
    dba TULARE REGIONAL MEDICAL
    CENTER,                                **NOTICE TO TULARE COUNTY**
14                                          **SUPERIOR COURT OF FILING OF**
                 Plaintiff,                 **NOTICE OF REMOVAL OF ACTION**
15                                          **TO THE UNITED STATES**
                                            **BANKRUPTCY COURT FOR THE**
16            v.                            **EASTERN DISTRICT OF CALIFORNIA**

17  BRUCE R. GREENE; BAKER &
    HOSTETLER, LLP, a limited liability
    partnership; PARMOND KUMAR, M.D.;
18  LINDA WILBOURN; RICARD TORREZ; and
    Does 1 through 50, inclusive,
19
                 Defendants.
20

21  TO THE CLERK OF THE TULARE COUNTY SUPERIOR COURT:

22          NOTICE IS HEREBY GIVEN that on May 28, 2019, Defendants BAKER & HOSTETLER

23  LLP, and BRUCE GREENE, ESQ., filed a Notice of Removal pursuant to 28 U.S.C. § 1452 and Fed. R.

24  Bankr. P. 9027, removing the above-captioned civil action from the Superior Court of the State of

25  California, County of Tulare, to the United States Bankruptcy Court for the Eastern District Of

26  California, Fresno Division.  A true and correct copy of the Notice of Removal is attached hereto as

27  Exhibit 1.

28

---
- 1 -
NOTICE TO TULARE COUNTY SUPERIOR COURT OF FILING OF NOTICE OF REMOVAL OF ACTION TO
THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

DATED: May 28, 2019

MURPHY, PEARSON, BRADLEY & FEENEY

By _____
Harlan B. Watkins
Attorneys for Defendants
BAKER & HOSTETLER LLP, and BRUCE
GREENE, ESQ.

JPG.3441761.docx

- 2 -

NOTICE TO TULARE COUNTY SUPERIOR COURT OF FILING OF NOTICE OF REMOVAL OF ACTION TO
THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF CALIFORNIA

**CERTIFICATE OF SERVICE**

I, Alice Kay, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause. My business address is Murphy, Pearson, Bradley & Feeney, 88 Kearny Street, 10th Floor, San Francisco, CA 94108-5530.

On May 28, 2019, I served the following document on the parties in the within action:

**NOTICE TO TULARE COUNTY SUPERIOR COURT OF FILING OF NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF CALIFORNIA**

| X | **VIA MAIL:** I am familiar with the business practice for collection and processing of mail. The above-described document will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service on this date, addressed as listed below. |
|---|---|

| | |
|---|---|
| Michael Lampe<br>LAW OFFICES OF MICHAEL J. LAMPE<br>108 West Center Avenue<br>Visalia, CA 93291<br><br>Email: mjl@lampe-law.com | Attorney For Plaintiff<br>TULARE LOCAL HEALTHCARE<br>DISTRICT, dba TULARE REGIONAL<br>MEDICAL CENTER |

I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on May 28, 2019.

By _Alice Kay_

Alice Kay

NOTICE TO TULARE COUNTY SUPERIOR COURT OF FILING OF NOTICE OF REMOVAL OF ACTION TO THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF CALIFORNIA