| | |
|---|---|
| 1 | James A. Murphy - 062223<br>JMurphy@mpbf.com |
| 2 | Harlan B. Watkins - 176458<br>HWatkins@mpbf.com |
| 3 | Kristin L. Iversen - 286787<br>KIversen@mpbf.com |
| 4 | MURPHY, PEARSON, BRADLEY & FEENEY |
| 5 | 88 Kearny Street, 10th Floor<br>San Francisco, CA 94108-5530 |
| 6 | Telephone: (415) 788-1900<br>Facsimile: (415) 393-8087 |
| 7 | Attorneys for Defendants |
| 8 | BAKER & HOSTETLER LLP and<br>BRUCE R. GREENE, Esq. |

# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In re<br><br>TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>Debtor.<br><br>Tax ID #: 94-6002897<br>Address: 869 N. Cherry Street<br>Tulare, CA 93274 | CASE NO. 17-13797<br><br>Chapter 9<br><br>ADV. PROC. 19-01052<br><br>**OPPOSITION OF BAKER & HOSTETLER LLP AND BRUCE R. GREENE, ESQ. TO *AMENDED DEBTOR TULARE LOCAL HEALTHCARE DISTRICT'S MOTION FOR REMAND OF LAWSUIT TO STATE COURT PURSUANT TO 28 U.S.C. § 1452(B)*** |
| TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER,<br><br>Plaintiff,<br><br>v.<br><br>BRUCE R. GREENE; BAKER & HOSTETLER, LLP, a limited liability partnership; PARMOND KUMAR, M.D.; LINDA WILBOURN; RICARD TORREZ; and Does 1 through 50, inclusive,<br><br>Defendants. | Date: July 17, 2019<br>Time: 1:30 p.m.<br>Place: 2500 Tulare Street<br>Fresno, CA 93721<br>Courtroom 13<br>Judge: Honorable Renè Lastreto II |

- 1 -
OPPOSITION OF BAKER & HOSTETLER LLP AND BRUCE R. GREENE TO AMENDED DEBTOR TULARE LOCAL HEALTHCARE DISTRICT'S MOTION FOR REMAND TO STATE COURT

# TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | SUMMARY OF ARGUMENT | 5 |
| II. | STATEMENT OF FACTS | 5 |
| | A. The Bankruptcy Case | 5 |
| | B. The Celtic Adversary Proceeding (Adv. Proc. 18-01008) | 6 |
| | C. The HCCA Adversary Proceedings (Adv. Procs. 17-01095 and 18-01005). | 8 |
| | D. This Adversary Proceeding (Adv. Proc. 19-01052) | 9 |
| III. | ARGUMENT | 10 |
| | A. The Court has Jurisdiction Over the Adversary Proceeding. | 10 |
| | B. This Court Should Retain Jurisdiction Over the Debtor's Lawsuit. | 13 |
| IV. | CONCLUSION | 17 |

# TABLE OF AUTHORITIES

Page

### CASES

*In re AmericanWest Bankcorporation*,
    2011 WL 6013779 (Bankr. E.D. Wash. Dec. 2, 2011) .................................................. 15

*In re Cedar Funding, Inc.*
    419 B.R. 807 (9th Cir. BAP 2009) .............................................................................. 14

*In re Cytodyn of New Mexico, Inc.*
    374 B.R. 733 (Bankr. C.D. Cal. 2007) ........................................................................ 17

*In re Harris Pine Mills*
    44 F.3d 1431 (9th Cir. 1995) ...................................................................................... 11

*In re Icenhower*
    757 F.3d 1044 (9th Cir. 2014) ............................................................................... 10, 13

*In re Iridium Operating, LLC*
    285 B.R. 822 (Bankr. S.D.N.Y. 2002) ........................................................................ 11

*In re NE Opco, Inc.*
    2014 WL 4346080 (Bankr. C.D. Cal. Aug. 28, 2014) ................................................ 17

*In re Schlotzsky's Inc.*
    351 B.R. 430 (Bankr. W.D. Tex. 2006) ...................................................................... 14

*In re Wai Yin Lam*
    2019 WL 994342 (Bankr. Haw. Feb. 26, 2019) .................................................... 15, 16

*In re Wilshire Courtyard*
    729 F.3d 1279 (9th Cir. 2013) .................................................................................... 11

*Kismet Acquisition, LLC v. Icenhower (In e Icenhower)*
    757 F.3d 1044 (9th Cir. 2014) .................................................................................... 10

*Linkway Iv. Co. v. Olsen (In re Casamont Investors, Ltd.)*
    196 B.R. 517 (9th Cir. BAP 1996) .............................................................................. 16

*Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*
    458 U.S. 50 (1982) ..................................................................................................... 11

*Sasson v. Sokoloff (In re Sasson)*
    424 F.3d 864 (9th Cir. 2005) ...................................................................................... 12

*Senorx, Inc. v. Courdert Bros., LLP*
    2007 WL 1520966 (N.D. Cal. May 24, 2007) ................................................. 13, 14, 15

*Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*
    504 F.3d 775 (9th Cir. 2007) ...................................................................................... 16

# TABLE OF AUTHORITIES
(continued)

Page

*Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*
   447 B.R. 302 (C.D. Cal. 2010) ............................................................................... 13

*Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*
   549 U.S. 443 (2007) .................................................................................................. 16

**STATUTES**

11 U.S.C.
   §§ 101 *et seq.* ............................................................................................................. 5
   § 902(1) .................................................................................................................... 10
   § 924 .......................................................................................................................... 5
   § 925 .......................................................................................................................... 5

28 U.S.C.
   § 1334 ............................................................................................................. 11, 12, 13
   § 1334(b) ............................................................................................................ 11, 12
   § 1452(b) ............................................................................................................ 13, 14
   § 157(b) .................................................................................................................... 11
   § 157(b)(2)(B) ......................................................................................................... 11
   § 157(b)(2)(O) ......................................................................................................... 11

- 4 -

OPPOSITION OF BAKER & HOSTETLER LLP AND BRUCE R. GREENE TO AMENDED DEBTOR TULARE LOCAL HEALTHCARE DISTRICT'S MOTION FOR REMAND TO STATE COURT

Baker & Hostetler LLP ("B&H") and Bruce R. Greene, Esq. ("Greene") (collectively, the "Defendants") file this response ("Response") in opposition to the *Amended Debtor Tulare Local Healthcare District's Motion for Remand of Lawsuit to State Court Pursuant to 28 U.S.C. § 1452(B)* (Doc. No. 17) (the "Debtor" and the "Motion," respectively), requesting that the Court maintain jurisdiction over the above-captioned adversary proceeding ("Adversary Proceeding") and state as follows in support.

## I. SUMMARY OF ARGUMENT

This is now the fourth adversary proceeding before this Court involving the same intertwined set of facts and allegations. As such, this Court has significant familiarity with the facts and issues in this Adversary Proceeding, especially when compared to the state court that never conducted a single hearing or proceeding in this matter in the approximately 30 days the case was pending there. The Court's resolution of this Adversary Proceeding will necessarily determine the validity and amount of B&H's Proof of Claim (as defined below) and the set-off of such claim against any damages awarded to the Debtor and is thus a core proceeding affecting the liquidation of the assets of the debtor and the adjustment of the debtor-creditor relationship. In addition to having core jurisdiction, the Court has jurisdiction over the Adversary Proceeding under its broad related to jurisdiction over any action that "could conceivably have any effect" on the bankruptcy case. It is undisputed that this Court is not required to abstain from this Adversary Proceeding, and the Court should not exercise its discretion to equitably remand it because the most relevant of the equitable remand factors and judicial efficiency weigh heavily in favor of retaining jurisdiction over the Adversary Proceeding.

## II. STATEMENT OF FACTS

### A. The Bankruptcy Case

The Debtor commenced this case by filing a voluntary petition for relief under Chapter 9 of the Bankruptcy Code[1] on September 30, 2017 (Doc. No. 1) (the "Petition Date").

On October 24, 2017, the Debtor filed its List of 20 Largest Creditors (Doc No. 135) identifying B&H as a creditor owed more than $300,000, and thereafter filed its List of Creditors and Claims Pursuant to 11 U.S.C. §§ 924 and 925 (Doc. No. 154) identifying B&H as a creditor in an "unknown"

---

[1] All references herein to the "Bankruptcy Code" refer to 11 U.S.C. §§ 101 *et seq.*

OPPOSITION OF BAKER & HOSTETLER LLP AND BRUCE R. GREENE TO AMENDED DEBTOR TULARE LOCAL HEALTHCARE DISTRICT'S MOTION FOR REMAND TO STATE COURT

amount. Consistent with the Debtor's representations that B&H was its creditor, B&H timely filed a proof of claim in the amount of $498,825.40 based on legal services performed for the Debtor through September 30, 2017. (*See* Claim No. 225-1) (the "Proof of Claim"). The Debtor has not objected to the Proof of Claim.

Beginning shortly after the Petition Date, the Debtor and Healthcare Conglomerate Associates, LLC ("HCCA") extensively litigated the Debtor's motion to reject a number of agreements between the parties, including the Management Services Agreement ("MSA") (Doc. Nos. 32, 34-35, 81-92, 103-117, 126). The Debtor's basis for seeking rejection of the MSA included that the relationship between the parties had deteriorated due to a dispute between the Debtor's board of directors over their respective authority and whether the Celtic Transaction (as defined below) was properly authorized by the Debtor — common factual issues that were also at issue in the related Celtic and HCCA adversary proceedings and now form the basis for this Adversary Proceeding. The Court ultimately granted the motion to reject (Doc. No. 181).

**B.  The Celtic Adversary Proceeding (Adv. Proc. 18-01008)**

In February 2018, the Debtor filed an adversary proceeding against Celtic Leasing Corp., MB Financial Bank, N.A., and MB Equipment Finance, LLC (the "Celtic Adversary" and "Celtic Parties," respectively) in which the Debtor sought to avoid and recover transfers that were part of a pre-petition transaction between the Debtor and one or more of the Celtic Parties (the "Celtic Transaction"). The Celtic Adversary involved the same inextricably intertwined facts that form the basis for this Adversary Proceeding:

(i) HCCA and the Debtor entered into a MSA and related contracts under which Healthcare Conglomerate Associates, LLC ("HCCA") and its principal, Benny Benzeevi, MD ("Benzeevi") managed the Debtor's operations (HCCA Adversary, Doc. No. 9, ¶¶8-11);

(ii) In September 2016, various citizens began a campaign to recall one of the Debtor's five board members, Parmod Kumar ("Kumar"), and that campaign resulted in a recall election to be held in July 2017 (*id.* at ¶¶14, 19);

(iii) In November 2016, the District conducted an election for two seats on the board and Kevin Northcraft ("Northcraft") and Michael Jamaica ("Jamaica") were elected (*id.* at ¶15);

OPPOSITION OF BAKER & HOSTETLER LLP AND BRUCE R. GREENE TO AMENDED DEBTOR TULARE LOCAL HEALTHCARE DISTRICT'S MOTION FOR REMAND TO STATE COURT

(iv)    HCCA and Benzeevi believed Northcraft and Jamaica, the two new board members, had substantial disagreements with the three existing board members over how to manage the Debtor (*id.* at ¶16);

(v)    In June 2017, the Debtor convened a meeting of the Debtor's board at which time the Debtor authorized a borrowing of up to $22 million to fund the its operations ("Resolution 852") (*id.* at ¶20);

(vi)    In July 2017, a special election was held at which Kumar was recalled and Senovia Gutierrez ("Gutierrez") was elected to the Debtor's board (*id.* at ¶21);

(vii)    Thereafter, a dispute arose between Kumar, Gutierrez, and others over when Kumar's role as a board member would officially end and Gutierrez's role would officially begin (*id.* at ¶¶22-25);

(viii)    As part of the dispute, the Debtor stated that Gutierrez would not be recognized as board member until certain conditions were satisfied (*id.* at ¶¶25-26);

(ix)    Thereafter, Northcraft and Jamaica, as board members, and Gutierrez, purporting to act as a board member, reacted by scheduling multiple specially-scheduled board meetings at which, despite the conditions to recognizing Gutierrez as a board member remaining unsatisfied, they allegedly took actions on behalf of the Debtor by purporting to act as a majority of the Debtor's board of directors (*id.* at ¶¶26-30);

(x)    Because of the dispute over which individuals constituted the Debtor's board of directors, both groups disputed that the actions purportedly taken by the other were valid (*id.* at ¶¶31-32);

(xi)    The Debtor alleges that the Defendants provided one or more of the Celtic Parties with an opinion letter on which they relied in order to proceed with the Celtic Transaction (the "Opinion Letter") (*id.* at ¶53);

(xii)    In August 2017, the Debtor and one or more of the Celtic Parties entered into the Celtic Transaction (*id.* at ¶¶ 40-51, 54-59); and

(xiii)    The Debtor alleges that the Celtic Transaction was not properly authorized by the Debtor because the special-set board meetings by Northcraft, Jamaica, and Gutierrez were valid

board actions and the Debtor's authority to enter into the Celtic Transaction was rescinded at those meetings (*id.* at ¶¶29-32).

After approximately a year of litigating the Celtic Adversary before the Court, the Debtor and the Celtic Parties entered into a settlement agreement under which, among other things, (i) the Debtor agreed to pay one or more of the Celtic Parties $500,000, (ii) all assets subject to the dispute were transferred to the Debtor, (iii) one or more of the Celtic Parties were granted an allowed unsecured claim; (iv) the parties executed broad mutual releases of any and all claims they held against each other, and (v) the Celtic Adversary was dismissed.

**C.　The HCCA Adversary Proceedings (Adv. Procs. 17-01095 and 18-01005)**

Prior to the Petition Date, HCCA filed a lawsuit against the Debtor in California state court seeking damages for the Debtor's breach of the MCA and seeking declaratory relief related to the MCA. The basis for HCCA's claims against the Debtor included the same core of facts in dispute in the Celtic Adversary and in this Adversary Proceeding, including that: (i) HCCA's management of the Debtor's operations pursuant to the MSA (HCCA Adversary, Doc. No. 4, ¶¶8-11); (ii) the extent to which the parties performed their obligations under the MSA (¶¶13-26); (iii) the occurrence and aftermath of the November 2016 election at which Northcraft and Jamaica were elected to the board, and the dispute between HCCA and the actual and purported members of the Debtor's board (¶¶29-40). The Debtor filed a counterclaim against HCCA relating to (i) the Debtor's efforts to obtain financing that ultimately led to the Celtic Transaction, (ii) the recall election involving Kumar and Gutierrez and the dispute over their respective authority, and (iii) alleged efforts to "interfere" with the seating of Gutierrez by the Debtor's legal counsel, "Baker Hostetler and Bruce Greene." (Doc No. 9, ¶¶12-15.)

After the Petition Date, the Debtor removed the HCCA lawsuit to this Court by filing a Notice of Removal (the "HCCA Adversary"), correctly stating that removal was appropriate because the claims at issue would "have a clear and direct impact on the bankruptcy estate and will therefore have a significant effect on the administration of the estate" due to HCCA's status as a creditor and because the "determination of the Lawsuit necessarily involves the allowance or disallowance of HCCA's substantial and highly disputed claim(s) against TRMC." (HCCA Adversary, Doc. No 1 at ¶8.)

Thereafter, HCCA filed a motion to remand the HCCA Adversary. The Debtor opposed the

1  motion, asserting that the Court should retain jurisdiction because the parties' claims "form the center
2  of, and are inextricable intertwined in, a web of litigation pending, and to be pending, in this Court" and
3  that consolidating the litigation before the Court would "allow for the efficient adjudication of claims
4  concerning a debtor's liability to its creditors as well as a debtor's claims against its creditors." (HCCA
5  Adversary, Doc. No. 59 at 2.)  More specifically, the Debtor correctly identified that the HCCA
6  Adversary would involve adjudicating the facts and issues "respecting the events surrounding the
7  election of Northcraft and Jamaica to the Board, the recall election in which Gutierrez was elected to the
8  Board and the authority or lack thereof to borrow funds or sell District assets in connection with the
9  Celtic Transaction." (*Id.* at 16.)  The Debtor further asserted that a remand was inappropriate because
10 after considering the multitude of pleadings relating to the Debtor's pre-petition operations, the court
11 "has gained an extensive understanding of the issues" in the HCCA Adversary, whereas in the state court
12 case there had been "no activity whatsoever" and remanded the case would "only be inefficient, [and]
13 duplicate the time, cost and expense of litigating the facts and legal issues in a non-bankruptcy forum
14 that has no familiarity with the facts and issues . . . ." (*Id.* at 25-26, 28.)

15      In January 2018, the Debtor filed a second adversary proceeding against HCCA (the "Second
16 HCCA Adversary") seeking to avoid and recover a transfer evidenced by a Deed of Trust made for the
17 purpose of securing repayment of a pre-petition loan from HCCA to the Debtor in connection with the
18 MSA, which was the subject of the Celtic and HCCA Adversary Proceedings.  Similar to the other
19 adversary proceedings, the Debtor alleged that HCCA did not have proper authorization from the
20 Debtor's board of directors, this time to execute the Deed of Trust, and thus the Deed of Trust was void.

21 **D.    This Adversary Proceeding (Adv. Proc. 19-01052)**

22      Recently, on April 24, 2019, the Debtor filed a Complaint against the Defendants and three other
23 individuals, alleging claims for breach of fiduciary duty, fraud, professional negligence, and breach of
24 contract for legal services.  Significantly, the Complaint involves the same set of intertwined facts that
25 have been at issue throughout the bankruptcy case, including (i) the Debtor's relationship with HCCA
26 (Doc. No. 1 at ¶¶14-17), (ii) the Debtor's efforts to obtain financing that ultimately led to the Celtic
27 Transaction (*id.* at ¶¶ 36-43), (iii) the recall election involving Kumar and Gutierrez and the dispute over
28 their authority leading to clashes over what purported board actions were valid (*id.* at ¶¶44-70), (iv) the

Defendants' opinion letter provided to the Celtic Parties (*id.* at ¶¶71-77), and (v) the Debtor's allegation that the Defendants took various inappropriate actions with respect to the Celtic Transaction and improperly received benefits flowing from the Celtic Transaction (*id.* at ¶¶78-86). Although the Complaint alleges the same set of facts that the Debtor previously asserted were intertwined to litigations filed and to be filed before this Court, the Complaint fails to even mention that the Plaintiff is a Debtor before this Court.

On June 4, 2019, the Defendants filed their Answer and Affirmative Defenses to Plaintiff's Complaint (Doc. No. 5) ("Answer"), properly asserting B&H's right to set-off any damages awarded against B&H's Proof of Claim, with "the Proof of Claim allowed to the extent that the damages awarded in this action are less than the amount of the Proof of Claim, and the Proof of Claim disallowed and a judgment entered against B&H only to the extent such damages are more than the amount of the Proof of Claim." The Defendants' Answer also asserts affirmative defenses of estoppel and unclean hands based on the fact that the Debtor expressly and validly authorized and directed the Defendants to take many of the actions that the Debtor is now alleging form the basis for the Defendants' liability to the Debtor.

On June 17, 2019, the Debtor filed its Motion requesting that the Court exercise its discretion to equitably remand this Adversary Proceeding to the state court before which this case was pending for approximately 30 days. The Debtor's Motion should be denied.

### III. ARGUMENT

One of the fundamental goals of bankruptcy is to "centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas." *Kismet Acquisition, LLC v. Icenhower (In e Icenhower)*, 757 F.3d 1044, 1051 (9th Cir. 2014).[2] This Adversary Proceeding was just such an "uncoordinated proceeding" pending in a non-bankruptcy forum that was properly centralized before this Court, and this Court should retain jurisdiction over the Adversary Proceeding.

A.　**The Court has Jurisdiction Over the Adversary Proceeding.**

The Debtor contends that the issues in this Adversary Proceeding do not "arise under" the

---

[2] In a chapter 9 case, property of the estate means property of the debtor. 11 U.S.C. § 902(1).

Bankruptcy Code or "arise in" the Debtor's bankruptcy case, and therefore, are non-core proceedings. Whatever the merits of this argument were at the time the case was removed, they are now moot because the Defendants filed their Answer properly asserting a right to set-off the amount of the Proof of Claim against any damages awarded to the Debtor in the Adversary Proceeding. As such, the Adversary Proceeding is a core proceeding because the Adversary Proceeding directly implicates this Court's authority to determine the allowance and disallowance of claims against the estate, and the liquidation of assets of the debtor or the adjustment of the debtor-creditor relationship. *See* 28 U.S.C. § 157(b)(2)(B), (O).

Bankruptcy courts have jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Arising under" and "arising in" are terms of art. Proceedings "arising under" title 11 involve causes of action created or determined by a statutory provision of the Bankruptcy Code. *See In re Wilshire Courtyard*, 729 F.3d 1279, 1285 (9th Cir. 2013). Proceedings "arising in" title 11 do not involve causes of action created or determined by the Bankruptcy Code but involve claims which would have no existence outside of a bankruptcy case. *Id.* Claims "arising under" and "arising in" are typically core matters. *In re Harris Pine Mills*, 44 F.3d 1431, 1435 (9th Cir. 1995).

Core matters are more specifically defined as those directly concerning the "restructuring of debtor-creditor relations" and which constitute the "core of bankruptcy power." *See Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982). 28 U.S.C. § 157(b) provides a broad, non-exclusive list of core matters, including the "allowance or disallowance of claims against the estate," and "other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor" relationship." *Id.* at (b)(2)(B), (O). Additionally, it has been held that, even when claims are traditionally non-core, if the claims arise from the same operative acts as the core claim and proofs of claim, the non-core claims can be considered core claims. *See In re Iridium Operating, LLC*, 285 B.R. 822, 830 (Bankr. S.D.N.Y. 2002).

In this case, the Adversary Proceeding involves core claims that are subject to the Court's jurisdiction. The Adversary Proceeding involves the allowance and disallowance of claims and is a proceeding affecting the adjustment of the debtor-creditor relationship. The Adversary Proceeding and

- 11 -
OPPOSITION OF BAKER & HOSTETLER LLP AND BRUCE R. GREENE TO AMENDED DEBTOR TULARE LOCAL HEALTHCARE DISTRICT'S MOTION FOR REMAND TO STATE COURT

the Proof of Claim involve overlapping parties and the same factual basis that has been presented in all four of the related adversary proceedings litigated before the Court, including (i) the Debtor's relationship with HCCA, (ii) the Debtor's efforts to obtain financing that ultimately led to the Celtic Transaction, (iii) the recall election involving Kumar and Gutierrez and the dispute over their authority leading to clashes over what purported board actions were valid, (iv) the Defendants' opinion letter provided to the Celtic Parties, and (v) the Debtor's allegation that the Defendants took various inappropriate actions with respect to the Celtic Transaction and improperly received benefits flowing from the Celtic Transaction.

Moreover, resolution of the Adversary Proceeding will necessarily liquidate a Debtor asset and determine the allowance or disallowance of the Proof of Claim against the Debtor, both of which must be set-off against each other to determine the Debtor's net liability or amount owed. Thus, either (i) the Debtor's claims will fail or entitle the Debtor to a judgment against B&H in an amount less than the amount of the Proof of Claim, in which case the Court would allow the Proof of Claim in a reduced amount, or (ii) the Debtor will be entitled to a judgment against B&H in an amount greater than the amount of the Proof of Claim, in which case the Court would disallow the Proof of Claim, and enter judgment for the Debtor for the remaining amount. Regardless, the Adversary Proceeding will resolve the Debtor's claims against the Defendants and allowance or disallowance of the Proof of Claim based on a common and intertwined set of facts that the Court has dealt with on multiple occasions.

Even if the Court were to find that this is not a core proceeding, this Court clearly has "related to" jurisdiction over the Adversary Proceeding. 28 U.S.C. § 1334(b). The Ninth Circuit Court of Appeals has held that "related to" jurisdiction "is very broad, including nearly every matter directly or indirectly related to the bankruptcy." *Sasson v. Sokoloff (In re Sasson)*, 424 F.3d 864, 868 (9th Cir. 2005). The test for determining if a case falls within a bankruptcy court's "related to" jurisdiction is whether:

> *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*Senorx, Inc. v. Courdert Bros., LLP*, 2007 WL 1520966, *2 (N.D. Cal. May 24, 2007) (emphasis in original).

Here, the test is easily satisfied. The Adversary Proceeding involves a claim by the Debtor against a creditor based on a common core of facts that has been at issue in the main bankruptcy case and in three other adversary proceedings before the Court, and that will necessarily determine the validity and amount of the creditor's claim against the Debtor and liquidate the Debtor's claim against the creditor. The Adversary Proceeding could conceivably have an effect on the bankruptcy case by determining the amounts of allowable claims against the Debtor and the debtor-creditor relationship between the parties to the Adversary Proceeding.

**B.    This Court Should Retain Jurisdiction Over the Debtor's Lawsuit.**

It is undisputed that mandatory abstention under 28 U.S.C. § 1334 is inapplicable in cases - such as this - removed to a bankruptcy court. *Senorx, Inc. v. Coudert Bros., LLC*, 2007 WL 1520966, *2 (N.D. Cal. May 24, 2007). Thus, the question before the Court is one of equity under 28 U.S.C. § 1452(b), which permits the bankruptcy court to remand the case for an "equitable ground." This standard is "an unusually broad grant of authority," and any one of the relevant factors may provide a sufficient basis to retain jurisdiction over a matter or remand it. *Stichting Pensioenfonds ABP v. Countrywide Financial Corp.*, 447 B.R. 302, 312 (C.D. Cal. 2010). As such, the question is committed to the sound discretion of the bankruptcy judge and is reviewed on appeal only for an abuse of discretion. *In re Icenhower*, 757 F.3d 1044, 1059 (9th Cir. 2014).

Courts may consider up to fourteen factors in determining whether to remand a case under 28 U.S.C. § 1452(b):

(1)    The effect or lack thereof on the efficient administration of the estate if the court recommends remand;

(2)    the extent to which state law issues predominate over bankruptcy issues;

(3)    the difficult or unsettled nature of applicable law;

(4)    the presence of related proceedings commenced in state court or other nonbankruptcy proceedings;

(5)    the jurisdictional basis, if any, other than § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than the form of an asserted core proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgements to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden on the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial;

(12) the presence in the proceeding of nondebtor parties;

(13) comity; and

(14) the possibility of prejudice to other parties in the action.

*In re Cedar Funding, Inc.*, 419 B.R. 807, 820 (9th Cir. BAP 2009).

Importantly, in determining whether a case should be remanded, the court should exercise its discretion in determining which factors are relevant under the circumstances and the relative weight to apply to those factors; the analysis is not a mechanical exercise of counting the number of factors weighing for and against remand. *See e.g. In re Schlotzsky's Inc.*, 351 B.R. 430, 435 (Bankr. W.D. Tex. 2006) (stating that whether to retain jurisdiction over a dispute must be guided by equitable considerations germane to the case and mechanical application of multi-factor tests are often "doomed to fail," and collecting cases on the same).

The *Senorx* case is instructive. *Senorx, Inc. v. Coudert Bros., LLC*, 2007 WL 1520966, *2 (N.D. Cal. May 24, 2007). There, a former client filed a professional negligence claim against a law firm and various individual partners of the firm. After the firm filed a bankruptcy case and removed the litigation under 28 U.S.C. § 1452(b), the plaintiff filed a motion to remand. The court found that the claims constituted a core proceeding because the plaintiff had filed a proof of claim against the estate, and thus the lawsuit involved the "prototypical situation involving the allowance or disallowance of claims against the estate." (*Id.* at *1). The court also analyzed and denied the motion to remand, finding that the litigation would have an effect on the bankruptcy case because it would determine the validity and amount of the creditor's claims against the debtor and other claims "inextricably linked" to those claims.

(*Id.* at 2). And while the case involved purely state law claims, the court found that the applicable state law was "relatively straightforward" and did not support remand because "bankruptcy courts are capable of resolving issues of state law." (*Id.*). Finally, the court found that comity did not favor remand because, despite the fact that the litigation had been pending in state court for approximately two years, "the court had not made significant progress." *Id.*

The Court should apply the same reasoning here. As set forth above, the Adversary Proceeding is a core proceeding since it involves the Debtor's claims, and resolution of the Adversary Proceeding will necessarily determine the validity, amount, and allowance of the Proof of Claim and the setoff of those mutual debts - claims that are inextricably linked because they are based on the same set of facts and issues. For the same reason, it makes no sense to attempt to sever the factually-related claims into segments and retain jurisdiction over the core claims while remanding others. Retaining jurisdiction will promote judicial economy and is further appropriate here because of the close relationship between the bankruptcy and the Adversary Proceeding. The relevant facts in the Adversary Proceeding are the same intertwined facts that have been at issue throughout the bankruptcy case and the Celtic and HCCA adversary proceedings, and this Court has extensive familiarity with these facts. This is especially relevant in this case, where the state court did not conduct a single hearing or take a single substantive action in the Adversary Proceeding prior to its removal and the case was removed within approximately 30 days after the initial complaint was filed. Under these facts, it is clear that the state court had not made "significant progress" or "invested significant effort" into this dispute. *In re AmericanWest Bankcorporation*, 2011 WL 6013779, *6 (Bankr. E.D. Wash. Dec. 2, 2011) (denying motion to remand where there was "no indication that the state court invested significant effort in this controversy prior to its removal . . .").

Additionally, although the Adversary Proceeding involves the application of state law rather than federal law, courts have denied motions to equitably remand actions where — as here — the state law issues are straightforward. *See In re Wai Yin Lam*, 2019 WL 994342 *2 (Bankr. Haw. Feb. 26, 2019) (denying motion to remand case involving only state law claims where "[n]one of the state law claims are particularly novel or complex."). In fact, the United States Supreme Court has recognized that the claims allowance process, which is directly at issue in the Adversary Proceeding, "requires bankruptcy

OPPOSITION OF BAKER & HOSTETLER LLP AND BRUCE R. GREENE TO AMENDED DEBTOR TULARE LOCAL HEALTHCARE DISTRICT'S MOTION FOR REMAND TO STATE COURT

courts to consult state law in determining the validity of most claims." *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 444 (2007). Similarly, while a bankruptcy court, in the interest of comity, should "consider whether the state laws involved are complex such that they ought to be construed and applied by state trial courts and reviewed by state appellate courts," this factor weigh against remand where — as here — the case is not likely to present complex or novel questions of state law. *Linkway Iv. Co. v. Olsen (In re Casamont Investors, Ltd.)*, 196 B.R. 517, 524 (9th Cir. BAP 1996); *In re Wai Yin Lam*, 2019 WL at *2.

The Debtor argues that the Adversary Proceeding should be remanded because it has a right to a jury trial and will not consent to the Court conducting that trial. (Motion at 17). But it is well established that a party having a right to a jury trial and withholding its consent to having that trial in the bankruptcy court does not necessitate a remand. It simply means that the bankruptcy court may adjudicate all matters up to trial, then (if necessary) transfer the matter to district court for trial. For example, in *Sigma Micro*, the Ninth Circuit explained that even if the bankruptcy court cannot conduct a jury trial in a matter, it may still adjudicate all pre-trial matters, including matters of discovery, pre-trial conferences, and enter orders on dispositive matters such as motions to dismiss or motions for summary judgment. *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775, 787 (9th Cir. 2007). In fact, the court stated that "requiring that an action be immediately transferred to the district court simply because of a jury trial right would run counter to our bankruptcy system" which "promotes judicial economy and efficiency by making use of the bankruptcy court's unique knowledge of Title 11 and familiarity with the actions before them." (*Id.* at 787-88).

That is exactly the situation here. Judicial economy and efficiency is promoted by this Court retaining jurisdiction over the Adversary Proceeding because of this Court's extensive experience with the common core of facts in this Adversary Proceeding which have been litigated before the Court in multiple proceedings for nearly two years. Stated simply, the Court is not required to remand this case to the state court — which did not expend any effort or make any progress with this matter — solely because the parties may have the right to a jury trial. Pursuant to the Ninth Circuit's holding in *Sigma Micro*, the Court may preside over this Adversary Proceeding until the case is ready for a jury trial (if necessary), and then transfer it to the District Court for the Eastern District of California, Fresno

OPPOSITION OF BAKER & HOSTETLER LLP AND BRUCE R. GREENE TO AMENDED DEBTOR TULARE LOCAL HEALTHCARE DISTRICT'S MOTION FOR REMAND TO STATE COURT

Division, for the trial itself.

The remainder of the equitable remand factors are largely neutral or do not, on balance, weigh in favor of remand. For example, the Debtor makes the conclusory allegation that this case involves forum shopping by the Defendants in an effort to "avoid the consequences of their actions." (Motion at 17.) But the Debtor fails to acknowledge or address that courts in the Ninth Circuit have found this factor is neutral where "the evidence does not indicate that any party chose his or its respective forum in an attempt to abuse or manipulate the judicial process." *In re NE Opco, Inc.*, 2014 WL 4346080, *3 (Bankr. C.D. Cal. Aug. 28, 2014). That is certainly applicable here where the Defendants removed the Adversary Proceeding as soon as reasonably possible after it was filed, there was no meaningful activity in the state court, and absolutely no evidence of wrongdoing or ill intent. Further, if there was any forum shopping at issue here it was by the Debtor, in failing to disclose to the State Court that this bankruptcy had been pending before the Court for over two years, and that many of the issues set forth in the Complaint had been considered by this Court. In addition, the Debtor alleges that the burden on the bankruptcy court's docket weighs "heavily" in favor of remand because the case would involve significant discovery and "law and motion practice." (Motion at 16.) The Defendants disagree. California courts have found that, if anything, this factor weighs against remand because the burden on the state court of litigating a matter is "probably greater" than the bankruptcy court. *See In re Cytodyn of New Mexico, Inc.*, 374 B.R. 733, 741 (Bankr. C.D. Cal. 2007). This is particularly true when this Court is very familiar with the facts alleged by the Debtor. The Defendants respectfully suggest that this factor weighs in favor of retaining jurisdiction or should weigh heavily in either direction.

## IV. CONCLUSION

This Court has jurisdiction over the Adversary Proceeding and has presided over three other adversary proceedings and a contested matter involving a motion to reject based on the same facts and issues relevant here. The Court's resolution of this Adversary Proceeding will necessarily determine the validity and amount of B&H's Proof of Claim and the set-off of such claim against any damages awarded to the Debtor and is thus a core proceeding affecting the liquidation of the assets of the debtor and the adjustment of the debtor-creditor relationship. Retaining jurisdiction over the Adversary Proceeding will promote judicial economy and further one of the fundamental goals of Bankruptcy Code of

OPPOSITION OF BAKER & HOSTETLER LLP AND BRUCE R. GREENE TO AMENDED DEBTOR TULARE LOCAL HEALTHCARE DISTRICT'S MOTION FOR REMAND TO STATE COURT

consolidating and resolving disputes concerning a debtor in a centralized forum. The Court should not remand the Adversary Proceeding to the state court which is generally unfamiliar with the facts and circumstances and which took no action whatsoever in the Adversary Proceeding prior to removal.

For the reasons stated herein, the Defendants respectfully request that the Court deny the Motion and grant all other relief that is appropriate under the circumstances.

Respectfully submitted this 3rd day of July, 2019.

Dated: July 3, 2019

MURPHY, PEARSON, BRADLEY & FEENEY

By _____
James A. Murphy
Attorneys for Defendants
BAKER & HOSTETLER LLP and
BRUCE R. GREENE, Esq.

JAM.3470061.docx

# CERTIFICATE OF SERVICE

I, Alice M. Kay, declare:

I am a citizen of the United States, am over the age of eighteen years, and am not a party to or interested in the within entitled cause. My business address is 88 Kearny Street, 10th Floor, San Francisco, California 94108.

On July 3, 2019, I served the following document(s) on the parties in the within action:

**OPPOSITION OF BAKER & HOSTETLER LLP AND BRUCE R. GREENE, ESQ. TO *AMENDED DEBTOR TULARE LOCAL HEALTHCARE DISTRICT'S MOTION FOR REMAND OF LAWSUIT TO STATE COURT PURSUANT TO 28 U.S.C. § 1452(B)***

| | |
|---|---|
| X | **VIA MAIL:** I am familiar with the business practice for collection and processing of mail. The above-described document(s) will be enclosed in a sealed envelope, with first class postage thereon fully prepaid, and deposited with the United States Postal Service at San Francisco, California on this date, addressed as listed below. |
| | **VIA E-MAIL:** I attached the above-described document(s) to an e-mail message, and invoked the send command at approximately _____ AM/PM to transmit the e-mail message to the person(s) at the e-mail address(es) listed below. My email address is AKay@mpbf.com/ |
| | **VIA FACSIMILE:** The above-described document was transmitted via facsimile and a copy of same was mailed on this same date to the addresses listed below. |
| | **VIA FILE & SERVE:** By causing a true and correct copy thereof to be served through File & ServeXpress addressed to all parties appearing on the File & ServeXpress Serve electronic service list. |

Michael Lampe  
LAW OFFICES OF MICHAEL J. LAMPE  
108 West Center Avenue  
Visalia, CA 93291

Attorney For Plaintiff  
TULARE LOCAL HEALTHCARE DISTRICT, dba TULARE REGIONAL MEDICAL CENTER

Dirk B. Paloutzian  
Peter G. Fashing  
BAKER MANOCK & JENSEN, PC  
5260 North Palm Avenue, Fourth Floor  
Fresno, CA 93704  
Phone: 559-432-5400

Attorney for Defendant  
LINDA WILBOURN

I declare under penalty of perjury under the laws of the State of California that the foregoing is a true and correct statement and that this Certificate was executed on July 3, 2019.

By _____*/s/ Alice Kay/*_____  
    Alice M. Kay